Rogers
v.
Morton.

Rogers and others *vs.* Morton and others, assignees of
H. B. Gwathmey.

Where, on the settlement of an account, a debtor gave to his creditor sever-
al securities in payment of an assumed balance, and amongst others a
promissory note payable to a *third person*, and an action was subsequently
brought upon the note by the assignees of the payee, who had been discharg-
ed as an insolvent; *it was held*, on the debtor showing that the true balance
was greatly less than the assumed balance, that the *onus probandi* of show-
ing how the *payee* came to the possession of the note, or rather the consid-
eration given by him for it, was cast upon the plaintiffs; and omitting to
do so, that the defendant was entitled to a deduction to the amount claim-
ed as having been allowed on the settlement to the creditor, beyond the
amount actually due.

ERROR from the superior court of the city of New-York.
Morton and others, assignees of H. B. Gwathmey, an insol-
vent debtor, declared upon a note bearing date 2d January,
1828, for $2000, given by the defendants, payable to *Gwath-
mey*, with interest from the 26th of the preceding October.
On the trial of the cause, the making of the note and the ap-
pointment of the plaintiffs as *assignees* were admitted. The
defendants proved that the note in question was given on a
settlement with one *John Grimshaw* of an account which he
presented against them, exhibiting a balance in his favor of
$5337 61 cts, and that one item in such account against the de-
fendants was their draft on one J. Richards, of New-Orleans,
for $2000, bearing date 10th November, 1826, payable at 90
days to N. Rogers, and endorsed by him to *Jeremiah Thomp-
son*, which draft was returned protested; that there was a
payment made on account of such balance of two accept-
ances amounting together to $2550, and the note in question
was made and delivered. The acceptances, which were sub-
sequently transferred by Grimshaw to a third person, were du-
ly paid. Thompson purchased of the defendants the draft
on Richards, and after it was returned protested, Grimshaw
offered him $1700 for it, and he agreed to sell the draft to him
for that sum, and would have delivered it to him, had he paid
according to the agreement, which he did not do. Thompson

kept the draft for Grimshaw until after Grimshaw's failure, which took place in the latter part of October, 1827. Grimshaw never was the holder of the draft. On the 20th January, 1828, Thompson sold the draft to *Samuel Bell,* and the defendants subsequently paid *Bell* the amount thereof. The defendants after proving that ten days before the trial of the cause, they gave notice to the plaintiffs that on the trial they would prove that the note in question was obtained from them without legal or sufficient consideration, and by undue means, and that they would require the plaintiffs to *prove the consideration given by Gwathmey* for the note, and the time when he became the holder thereof, *insisted* that from the facts in the case, it was manifest that at the date of the note in question, Grimshaw was not the holder of the draft on Richards, and consequently the balance due to him at the time of the settlement was only $3276,31 ; that after deducting from that sum the acceptances received by Grimshaw, he was entitled only to the balance, with the interest thereof since 26th October, 1827, which now amounted to $822,24, for which sum they conceded they were liable to have a verdict pass against him ; but that as to $1177,71, the residue of the note in question, either fraud or want of consideration had been shown—either of which was sufficient to cast the burden upon the plaintiffs to prove a consideration from Gwathmey to Grimshaw ; and that the plaintiffs having failed to prove such consideration, Gwathmey ought to be considered *as the trustee* or agent of Grimshaw, and then the same defence was admissible as though the note had been made payable to the latter, and the suit brought in his name ; and they prayed the court to instruct the jury accordingly. The court instructed the jury that the plaintiffs were entitled to a verdict for the *whole amount* of the note, and the jury found accordingly ; upon which verdict judgment was entered. The defendants having excepted to the charge of the court, obtained a bill of exceptions to be sealed, and sued out a writ of error.

*A. G. Rogers & J. W. Gerard,* for the plaintiffs in error, insisted that as *Gwathmey* was the *payee,* and not the endorsee of

ALBANY,<br>
Oct. 1834.<br>
Rogers<br>
v.<br>
Morton.

ALBANY,
Oct. 1834.

Rogers
v.
Morton.

the note, the right to impeach the consideration was unquestionable; but if Gwathmey was to be regarded as an endorsee, the facts shown by the defendants, and the notice given requiring the proof of consideration, cast the *onus probandi* on the plaintiffs to show that a consideration passed from Gwathmey to Grimshaw for the note in question. Chitty on Bills, 400. 4 Taunt. 114. 1 Camb. 100. 2 id. 574. 2 Carr. & Payne, 606. Again, if Gwathmey should be considered as an endorsee, they insisted that it was evident that he had advanced nothing on the faith of the note; that if there was a debt due to him from Grimshaw, it must have been an antecedent debt; and if so, he took the note subject to all equities existing between the defendants and Grimshaw, 20 Johns. R, 627; 9 Wendell, 170; 10 id. 85; that the plaintiffs having failed to show any consideration from Gwathmey to Grimshaw, the former, it was contended, must be considered as the *trustee agent* of the latter; and if so, the same defence was admissible as if Grimshaw had been the payee of the note and the plaintiff in the suit; and that the facts disclosed showed either fraud or a partial failure of consideration—and either constituted a defence to the extent claimed by the defendants. 8 Cowen, 31. 13 Johns. R. 302. 15 id. 230. 17 id. 301. 2 Wendell, 431. 6 id. 615.

*D. B. Tallmadge*, for the defendants in error, contended that no such fraud on the part of Grimshaw had been shown as invalidated the note; that his representation that he was the creditor of the defendants below, was of such a character as would not have sustained an action for *deceit*, as it was in the power of the defendants to ascertain the truth, by requiring the production of the draft, of which he claimed to be the owner, 4 Starkie's Ev. 471. 2 Johns. R. 50. That the representation, however, if untrue, subjected Grimshaw to an action of *assumpit*; and being liable to such action, there was no failure of consideration. That if fraud existed in the case, or there was a failure of consideration, the defendants had no right to ask that the whole subject of defence should be applied to this note; the other sureties given to Grimshaw being equally affected by such defence, an apportionment

among which could be made only in a court of equity. But the counsel insisted that Gwathmey was a *bona fide* holder of the note upon good consideration, and without notice of fraud or want of consideration; and that sufficient had not been shown to cast upon him the burden of proving the consideration upon which he received the note. That the notice given by the defendants, calling upon him for proof, imposed no additional duty upon him, as its only effect was to give the defendants an advantage against their adversaries in submitting the case to a jury.

*By the Court*, NELSON. J. I am of opinion that the facts disclosed by the bill of exceptions were sufficient to throw the burden upon the plaintiffs, of showing that Gwathmey was a *bona fide* holder for value. A promissory note imports a valuable consideration upon its face, and possession is presumptive evidence of property rightfully acquired ; but when the maker shows that it was obtained from him and put into circulation by force or fraud, all the above intendments of law are rebutted, and proof becomes necessary. The cases are full on this point. Chitty on Bills. 32, 68, 400, 1. 13 East, 134, n. 1 Wheat. Selw. 265. 2 Carr. & Payne, 606. 6 Wendell, 615. 5 Pick. 412. 2 Campb. 596. 22 Com. Law. R. 78. 10 Johns. R. 232. 3 Johns. Cas. 260, 263. Now it is clear, from the evidence, that a fraud was committed upon the makers at the time the note was given; and to the extent of the fraud, it would constitute a good defence against Grimshaw. The note was given to him in the name of Gwathmey, whether in trust for himself or for value does not appear ; if for the latter, it seems to me it should have been shown. Grimshaw used the name of Gwathmey as an original party to the note, and, for aught appearing, without his privity or assent ; and if there was nothing else in the case, it would obviously stand upon the same footing as if the note had been taken payable to himself. The only facts that can be relied on to vary the case are, that the suit is brought in the names of the assignees of Gwathmey, and the note is in their possession ; but this inference of property, I think, is fairly rebutted by the rest of the case. Unless Grimshaw procured

the endorsment of Gwathmey, he could not collect the note himself in any other way than in his name or in that of his assignees. The fact, therefore, of the suit being in the names of the assignees, is not incompatible with the continuance of the title and property of the note in Grimshaw. I may add, that as Gwathmey is an original party to the note, the *onus* lay on him to show the case an exception to the general rule, that the consideration may be inquired into between the original parties. Upon these grounds, I think, the defence offered should have been admitted to prevail, and that the judgment must therefore be reversed.

Judgment reversed.