## THE HIGHLAND BANK vs. DUBOIS.

> Where the president of a bank, who is the maker of an endorsed note discounted by it, procures a third person cognizant of the facts, to make a new note of the same tenor and amount, which he endorses and exchanges for his own, and delivers that to the maker of the new note for his security, making entries in the books of the bank indicating that the first note is paid and the second discounted; *held* that the first note was not paid, but remained in force against both maker and endorser.

MOTION for a new trial upon a case. The plaintiff brought assumpsit against the defendant, as endorser of a promissory note for $6000, made by Gilbert Ogden Fowler, dated August 10, 1843, payable six months after date. The cause was tried at the Orange circuit on the 17th September, 1845, before the Hon. Charles H. Ruggles, circuit judge. The endorsement, pre-

The Highland Bank *v.* Dubois.

sentation for payment, non-payment and notice to defendant, were admitted, and the plaintiff rested. The following facts were then proved, upon which the defendant relied for his defence.

Gilbert Ogden Fowler, the maker of the note, was president of the Highland Bank, and was permitted to discount notes for the bank in the interval between the meetings of the board of directors. All such notes were entered in the appropriate books of account of the bank, and in the *offering book*, which was always read before the board of directors at its next meeting. The note in suit was discounted by the Highland Bank on the day of its date. On the 28th of October, 1843, Fowler told Alfred Post, the cashier of the bank, that he would like to reduce his liability to the bank for a short period, and requested Post to sign a note for $6000 to his order, payable on the day the note in suit would become payable, which he (Fowler) might substitute for it. Upon Post objecting, and suggesting that the withdrawal of the note endorsed by the defendant would be unusual, Fowler replied that he (Post) might take it and hold it as his security as long as he thought proper, and that he might at any time before its maturity restore it to the bank in exchange for his own without its being formally discounted. Post accordingly signed the new note, Fowler endorsed it, and then as president discounted it. Entries were made in the books of the bank, indicating the payment of the first note with the proceeds of the second, which was entered as a discounted note in the appropriate books. In the tickler the first note was marked "*paid*," by Post. Fowler's account was credited with the payment of the note ; it was taken from the bundle of discounted notes by Post, and remained in his private custody until the 27th day of December, 1843. Fowler was taken very ill on the morning of that day and died in the evening. Between twelve and one o'clock Post restored the note to the bundle in the bank, and took therefrom the note made by him and destroyed it. He then erased the entries in the books of the bank indicating that it was paid. On the 9th day of November, 1843, the Highland Bank made a report to the

comptroller, dated that day and verified by the oaths of Fowler as president and Post as cashier, of the condition of the bank on the 1st day of November, 1843, in which $25,662.79 was stated as the amount of loans and discounts to directors. This sum did not include either the note in suit nor the one made by Post. It was admitted that the defendant knew nothing of the transaction between Fowler and Post until after the protest of the note endorsed by him. The plaintiff then offered to prove that although the entries in the books of the bank showed the discount of Post's note and the application of its proceeds to the payment of Fowler's note endorsed by the defendant, yet that the directors of the bank in fact knew nothing of it. The judge however excluded the evidence, and the plaintiff excepted.

The evidence being closed, the circuit judge expressed an opinion to the jury, that Post's note was discounted and substituted in place of the note in suit, and that from the entries in the books of the bank and the report to the comptroller, the bank was chargeable with knowledge of the substitution, and an acquiescence in it; but that it did not appear that the directors knew of the transfer of Fowler's note to Post, no such transfer appearing on the books of the bank, nor any evidence being given that it ever authorized it; that there was no legal transfer of the note to Post; and that it was paid and satisfied. He also directed the jury to find whether the note was transferred and delivered by Fowler as president of the Highland Bank to Post, to be held as his property or for his security against the note he had given for the same amount. To this opinion and charge the plaintiff excepted. The jury found for the defendant, and also specially that the note was transferred and delivered by Fowler, as president of the Highland Bank, to Post, to be held by him as his property and for his security against the note which he had given for the same amount.

*J. W. Brown*, for plaintiff.

*A. B. Hasbrouck & N. Hill, Jr.* for defendant.

The Highland Bank *v.* Dubois.

*By the Court,* WHITTLESEY, J.   The plaintiff made out a prima facie case, and is entitled to a verdict upon it, whether the note is actually owned by the bank or some other person, unless some valid defence is established.   The defence insisted upon at the trial, and upon which the case turned in the charge of the judge, was, that the note was paid on the 28th of October, previous to its maturity, with the proceeds of a note made by a third person and endorsed by the maker of the one in suit. If indeed it were established that it was actually paid by money raised from any source by the maker, and the note placed at his control even before maturity, perhaps it could not again have life given to it so as to charge the endorser, whether he knew of the fact of its payment or not.   The witnesses testify that Post's note was discounted for the purpose of taking up Fowler's, and that Fowler's note, endorsed by the defendant, was paid before maturity with the proceeds of Post's; and the books of the bank exactly corroborate their statements, as every entry appears to have been made in them which would have been made upon the payment of the note in such a manner. The report to the comptroller gives countenance to the same view, as it does not embrace in the statement of debts owing by directors the note made by Fowler.   All this, however, is susceptible of explanation, and it seems to me that it is clearly explained by the testimony of Post, the maker of the second note.   His testimony is not inconsistent with the statements of the other witnesses; but he goes further than they do, and shows that the note in question was to be kept alive : that upon the transaction testified to by them, it was handed to him in pursuance of a previous understanding, on the faith of which he executed the second note, to be held by him as a security for the payment of the latter, and with the right to make a re-exchange whenever he chose.   If the note in question had been paid in full and intentionally, as we should be authorized to infer from the books and the testimony of the other witnesses, it should have been cancelled, or delivered to the maker.   So far from this being the case, it was never given to the maker, but on the contrary delivered to Post as an existing debt, and without any

intention of regarding it as paid, or destroying its vitality. It is now in the same condition as if it had been re-discounted by the bank. There was an exchange of securities and a re-exchange. It has been suggested, and it is perhaps likely that the object of this exchange grew out of the statute in relation to loans to directors of banks. (1 *R. S.* 590, § 1, *subd.* 9.) Fowler being president, was of course a director, and it would seem that he was liable upon other notes. He might desire to have it appear that the directors of his bank had loans to only a small amount, and this might induce a wish for the exchange. But as he was responsible on the second note as endorser, he would as to this note come equally within the provisions of the statute above referred to. The act required a statement of the amount "due from directors of the bank;" (*Laws of* 1843, *p.* 299, § 3;) and it was probably supposed that this required the officers only to return under this head such debts as stood charged to directors as makers, and not those upon which they were collaterally liable as endorsers, although the revised statutes referred expressly to such contingent responsibility. Such certainly was the construction given the act by the officers of this bank in their return to the comptroller, made a few days after this exchange, for neither the first note made by Fowler, nor the second made by Post and endorsed by Fowler, were included under the head of debts due from directors. Upon the inferences drawn from these facts it was contended on the argument that the exchange was made for an illegal purpose and therefore void. The report in evidence shows that the capital of the bank was $200,000, and the amount due from directors was but a little over $25,000; so that if the $6000 were added to such amount the whole would be far within the sum that might lawfully be loaned to directors. It was not therefore an attempt to cover up or conceal any unlawful act, and it is not perceived how it could in any manner so affect the transaction as to make it void. In my view of the transaction, if Post is to be believed, there was no payment of the note, and the circuit judge erred in instructing the jury as a matter of law that the note was paid. It ought at least to have been left to

The Highland Bank v. Dubois.

them to decide upon the credit to be given to Post. Independent of any statutory provision, the note in question would, by the transaction of October 28, have become the property of Post, and for aught that I can see in good faith. Whether he continued to own it, or whether it was again transferred to the bank, is of no consequence, as in either case a suit could be maintained in the name of the present plaintiff for the owner of the beneficial interest. (15 *Wend.* 640.)

There is a statutory provision which on the argument was thought to have a bearing on the case. No conveyance, assignment or transfer, not authorized by a previous resolution of the board of directors, can be made by any banking corporation of any of its real estate or any of its effects, exceeding the value of $1000. (1 *R. S.* 591, § 8.) The note in question was transferred by Fowler, as president of the bank, to Post. This the jury have found specially, and in so finding I think they have found that Post was to be credited as a witness, and that the note was not paid. But as no previous resolution of the directors was shown authorizing the transfer of the note, I do not perceive but that by the provision of the statute it was unauthorized. Post the transferee being the plaintiffs' cashier, must, I think, be assumed to have had notice, and therefore cannot be deemed a purchaser for a valuable consideration without notice, within the meaning of the section. It would then follow under the statute, that the transfer was void. The question arising from such a state of facts was argued, and it was urged that although the circuit judge should be found to have decided incorrectly in relation to the payment, yet the fact that this transfer is made void by the statute justified the direction to find a verdict for the defendant. I do not think it necessary here to examine the argument on this point. The question does not appear to have been made at the trial. Perhaps if it had been the plaintiffs could have obviated it by showing a previous resolution of the board of directors authorizing such transfer, either vesting general or special power in the president in relation to such matters. I think there should be a new trial                                       New trial granted.