Farrington *v.* The Frankfort Bank.

The judgment must be affirmed.

[ONEIDA GENERAL TERM, January 5, 1857. *Hubbard, Pratt, Bacon* and *W. F. Allen,* Justices.]

31b 183
34ap165

## FARRINGTON *vs.* THE FRANKFORT BANK.

To entitle the holder of negotiable paper, which has been procured by fraud, to retain and enforce the same against the party defrauded, he must show that he paid value for it at the time, or incurred some responsibility, or relinquished some right. or discharged a precedent debt, upon the faith and credit of the paper.

O., the drawer of two bills of exchange, obtained from the plaintiff his accommodation indorsement thereof, by means of a gross fraud, and negotiated the bills, thus indorsed, to the defendants, to meet an indebtedness from the drawer and drawees to them, a part of which was upon bills of exchange then overdue and under protest. There was no express agreement that the new bills should be taken in absolute payment of the protested paper, or as collateral security for it. Nor were the protested drafts delivered up to the parties, at the time; but subsequently, the parties to the old drafts were credited with the avails of the new, and charged with the old, and the latter were marked or cut with the cancelling iron of the bank, and placed in a drawer with paper of the like character, where it remained. *Held* that the defendants were not entitled to protection as bona fide holders for value, against the eqtities of the plaintiff; but that the latter could maintain an action against them, to restrain them from transferring the bills, or enforcing their collection, and to compel them to cancel the plaintiff's indorsements.

*Held also*, that evidence of what passed between O. and the plaintiffs, and of the declarations made by O. at the time the indorsements of the plaintiffs were procured, was properly admitted.

Under such circumstances, if the transfer of the paper is not in payment and discharge of the prior indebtedness, as between the parties — and without affirmative evidence of the fact, it will not be presumed — it is not a transfer in payment, so as to cut off the equities of third persons.

THE plaintiff brought this action to restrain the defendants from transferring or enforcing the collection, as against the plaintiff, of two bills of exchange, one for $2000, and the other for $2500, dated January 17, 1856; the former payable sixty, the latter seventy-five days after date, drawn by S. Osborn, jun.; Herkimer, on Osborn, Trumbull & McDonald of New York, payable to the order of, and indorsed by, the plaintiff; and to compel the defendants to cancel the indorsement of the plaintiff. The allegation was that the plaintiff was an accommodation indorser for the drawer, at the request of the drawer, who was one of the firm, upon whom the bill was drawn, and that the indorsement was obtained by the false and fraudulent representations of the drawer, and that the defendants are not *bona fide* holders for value. The cause was tried at the Herkimer circuit before Justice PRATT, who gave judgment for the plaintiff, according to the demand of the complaint, and the defendants appealed from that judgment.

*R. Conkling,* for the appellants.

*F. Kernan,* for the respondent.

*By the Court,* W. F. ALLEN, J. The bills in question, with the indorsements of the plaintiff, came into the possession of the defendants on the day of their date, (January 17, 1856,) and this suit was commenced and the preliminary injunction served two days thereafter, (January 19;) and as the circumstances under which the indorsements were obtained, if as alleged by the plaintiff, would not constitute a defense to an action at the suit of a bona fide holder for value, this action was necessary to the protection of the plaintiff, and was properly brought, and may be sustained if the evidence sustains the allegation of fraud, and the defendants are not holders for value, without notice of the fraud by which the plaintiff was induced to make the indorsements. Although, if the defend-

Farrington *v.* The Frankfort Bank.

ants should continue the holders of the bills until after they matured, the plaintiff might, if his allegations are true, defend himself at law in any action to be brought against him, the defense would be of no avail as against any other person or corporation to whom the defendants might transfer them before due; and hence this action was necessary and proper. (*Reed* v. *Bank of Newburgh,* 1 *Paige,* 215. *Coddington* v. *Bay,* 20 *John.* 637. *Hamilton* v. *Cummings,* 1 *John. Ch.* 517.) That the indorsements were procured by a very gross fraud is very clearly established by the evidence, and is not disputed by the counsel for the appellants. With this part of the finding of the justice, upon the trial, no fault is found upon the argument of the appeal, either in the printed points or otherwise; but, on the contrary, it was conceded that the plaintiff was induced to indorse the bills by the false and fraudulent representations of the drawer, substantially as stated in the complaint; so that we are released from the examination of this branch of the case. The serious question, and indeed the only question, upon the merits, is that arising out of the evidence of the circumstances and consideration of the transfer of the paper to the defendants; and upon this point there was some circumstantial but no substantial difference in the testimony of the two principal witnesses of the respective parties. The substance of the transaction is the same as detailed by both witnesses. The drawees of the bills indorsed by the plaintiff were at their date indebted to the defendants to a large amount, upon negotiable paper not yet due, and to the amount of $4500 upon paper overdue and under protest, and were in bad credit and actually insolvent. The drafts, with the indorsements of the plaintiff, were procured in order to provide for the debt past due, which was represented by two bills of Osborn on the firm of Osborn, Trumbull & McDonald, for $2000 and $2500 respectively; and that indebtedness constituted the only consideration of their transfer to the defendants. The protested drafts were not delivered to the parties at the time of the transfer of the new bills, but on the

evening of the 19th of January, a short time before the service of the papers for the commencement of this action, the parties to the old drafts were credited with the avails of the new and charged with the old, together with the expenses of the protest, &c., and the latter were marked or cut with the cancelling iron of the bank, and placed in a drawer with paper of the like character, where it remained up to the time of the trial.    This was the transaction, and it must speak for itself. It was carried out in substance according to the understanding of the parties.    There was no express agreement that the new bills should be, or should not be, taken in absolute payment of the protested paper, or as collateral security for it. It was doubtless the understanding of both parties that the debtors should have the benefit of the new paper in liquidation of the old, and that the difference in amount between the two, growing out of the accumulation of interest, protest, &c. should be settled and paid by the parties liable.    The form which the transaction took, upon the books of the defendants, and the disposal of the protested paper, was the result of an orderly and proper method of book-keeping and the course of business which was deemed proper by the officers of the bank, under the circumstances, rather than of any express agreement between the parties.

Whether a title acquired under these circumstances, and upon this consideration, is a valid title, or one acquired bona fide and *for value*, and perfect as against the equities of the plaintiff, is the principal question made upon the appeal.  For although the counsel for the respondents makes a point upon the complicity of the cashier of the defendants, in the fraud perpetrated upon the plaintiff, there is no proper allegation of such fraudulent combination, in the complaint, and the judge, at the circuit, did not base his decision upon any such fact.    It is not, therefore, deemed necessary to examine the evidence which it is claimed bears upon the question.   In other words, as the case comes before us, that question is not in it. That a holder for value can alone retain, against the defrauded

party, or enforce the collection of, negotiable paper procured by fraud, is not questioned. (*Rogers* v. *Morton*, 12 *Wend.* 484. 14 *id.* 575.) It is conceded that something more is necessary, to support the title of the holder, as against the true owner who has been fraudulently deprived of negotiable paper, or against the parties to such paper, obtained by fraud or without consideration, than that which would be sufficient as a consideration to support a transfer as between the parties negotiating it. In this case the bills were transferred to the defendants in the ordinary course of business, and upon a good consideration, as between them and Osborn, who, in the absence of any fraud, was fully authorized to deliver them to the defendants, so as to bind the plaintiff as indorser. But the question is, whether they were transferred for value given at the time, so as to protect the defendants against the equities of the plaintiff. The general principle settled in the case of *Bay* v. *Coddington*, (5 *John. Ch.* 54, and 20 *John.* 637,) that the consideration which will protect the indorsee of negotiable paper against the latent equities of parties or third persons, must be something of value parted with or paid at the time, in money, in property, some responsibility incurred or some right relinquished upon the faith and credit of the paper, is fully recognized in all the cases to be found in our books; and the only difficulty has arisen in the application of this principle to the circumstances of each case. A precedent debt, when the note or bill is taken in payment and satisfaction of it, and securities are given up or lost in consideration of the transfer, has been held a sufficient consideration as a present parting with value on the faith of the note. One difficulty in this case is in the want of evidence that the bills in question were taken in payment of the precedent debt of Osborn, so as to bring this case within the principle contended for. The judge has found that they were not so taken, and his conclusions appear to be warranted by the evidence and the course of decisions in this state. As between the defendants and their original debtors, it could not have been claimed

by the latter, under the authorities, that their liability was discharged by the transfer of those drafts, unless payment resulted from them. There was no express agreement that they should be received in absolute payment. Upon the refusal of the drawees to accept, or upon the dishonor of the bills at maturity, the defendants could have resorted to the original liability of their debtors and maintained an action against them upon the protested drafts. (*Olcott* v. *Rathbone*, 5 *Wend.* 490. *Cole* v. *Sackett*, 1 *Hill*, 516.). The new bills were but the bills of the debtors themselves, and not the paper of a third person. The plaintiff was the accommodation indorser of the debtor, and was known by the defendants' cashier to be such, which would bring the case within the principle of *Cole* v. *Sackett; Watervliet Bank* v. *White;* (1 *Denio*, 608;) *Waydell* v. *Luer*, (5 *Hill*, 448; 3 *Denio*, 410;) *Highland Bank* v. *Dubois*, (5 *Denio*, 558;) *Elwood* v. *Deifendorf*, (5 *Barb.* 398.) If the transfer was not in payment and discharge of the prior indebtedness, as between the parties — and without affirmative evidence of the fact, it will not be presumed — then it was not a transfer in payment, so as to cut off the equities of third persons. I have met with no case in our own courts in which a transfer of commercial paper is held to have been made in payment of an existing debt, so as to affect the parties to the paper transferred, or third persons claiming title to it, in which it is not in fact payment as between the parties to it. It is possible that the convenience and security of those dealing in commercial paper require that the law as held in this state should be somewhat modified, and perhaps be made to conform to the opinion of Justice Story in *Swift* v. *Tysen;* (16 *Peters*, 1;) but if this be so, it can only properly be done by the court of last resort, which can alone authoritatively review and modify the decisions of the court for the correction of errors. The decisions in our own state are not, I think, inconsistent with each other; and with the exception of the case of *White* v. *Springfield Bank*, (3 *Sandf. S. C. R.* 222;) there has been no attempt to detract from the force of the case of

Farrington *v.* The Frankfort Bank.

*Coddington* v. *Bay,* (20 *John.* 636,) or the leading opinion of the chancellor, in *Stalker* v. *McDonald,* (6 *Hill,* 93.) In *Coddington* v. *Bay,* the notes were transferred to the defendants to indemnify them against responsibilities already incurred for the party transferring them. Ch. J. Spencer says: "Now I understand by the usual course of trade, not that the holder shall receive the bills or notes thus obtained as securities for antecedent debts, but that he shall take them in his business and as payment for a debt contracted at the time." If the judge was right in his conclusion, as I think he was, that the drafts in question were not transferred in payment, absolutely, of the prior indebtedness of Osborn, Trumbull & McDonald, they were of course received as security, and the case is directly within *Coddington* v. *Bay.* The next case was that of *Wardell* v. *Howell,* (9 *Wend.* 170,) and there the note was transferred as collateral security for a prior debt, and in consideration of its receipt the plaintiff discontinued a suit which he had commenced against his debtor, and gave him time. This was not held a sufficient giving up or parting with any valuable right or thing, to give the party the rights of a bona fide holder for value. In *Rosa* v. *Brotherson* (10 *Wend.* 85) the question was directly presented, and it was expressly decided, that when a creditor receives the transfer of a negotiable note in payment of a precedent debt, he takes it subject to all equities existing between the original parties. In that case it did not appear that any security was given up. Chancellor Walworth says, in *Stalker* v. *McDonald,* that there is no doubt that *Rosa* v. *Brotherson* follows the decision of *Coddington* v. *Bay.* In *Payne* v. *Cutler,* (13 *Wend.* 605,) the notes were transferred and the value of them allowed on a settlement of accounts with the payee, and it was held that the holders were not holders for value, and that the consideration was inquirable into in an action by them against the maker. Ch. J. Savage says: "The plaintiff in this case neither having advanced any thing, nor incurred liability, on the credit of those notes, we must on this motion assume that the notes were

obtained by fraud, and the defense was therefore proper." *Francia* v. *Joseph* (3 *Edw. Ch.* 182) was, like this, an equitable action to recover possession of a promissory note, which, as was alleged, had been fraudulently diverted from its proper use, and the defendants had received it as security for a precedent debt of one who held it as the agent of the plaintiffs, and had on receiving it given up another note, made by a third person, which had been deposited with them as security for the same debt, and their title was declared invalid as against the claims of the rightful owner of the note. *The Bank of Salina* v. *Babcock* (21 *Wend.* 499) was decided upon grounds which were supposed to make the case an exception to the general rule, and was not considered by the court pronouncing the decision as overruling any of the antecedent cases in our own courts. The court held that the plaintiff did pay value for the note, in the strict sense of the term. Chief Justice Nelson says: "The proceeds of the note were placed to the credit of Trowbridge & Co. for whom it was discounted, and were drawn out, not, I admit, by checking for the money, but by the *cancellation* of the securities held by the plaintiff, which was the same thing in legal effect." By this cancellation a responsible indorser had been discharged, or if not discharged, the remedy against him had been rendered doubtful; and upon this distinguishing feature of the case the decision is rested. *The Bank of St. Albans* v. *Gilliland* (23 *Wend.* 311) was put upon the ground that the note was taken by the plaintiff *in full satisfaction of the prior indebtedness, without recourse, and the debt discharged.* The court, in giving judgment, reaffirm the doctrine that receiving a note for a precedent debt is not receiving it for value within mercantile usage, and refer approvingly to cases sustaining the doctrine. The plaintiff had discharged the personal responsibility of the original debtors, on the credit of the note, and had thus parted with value. The decision in the case of the *Bank of Sandusky* v. *Scoville* (24 *Wend.* 115) is placed by the court upon the same principle. Bronson, J. says: " The note was *dis-*

Farrington *v.* The Frankfort Bank.

*counted* by the plaintiffs for the benefit of Ward, to *extinguish* his debt, and the avails went to discharge his liability to the bank." Emphasis is laid upon the fact that a debt was "extinguished," and a personal liability of the original debtor "discharged." *The Mohawk Bank* v. *Corey* (1 *Hill,* 513) was an action against the defendants as the indorsers of the note of one Borst, which had been transferred to the plaintiff in *payment* of two notes, of the same maker, indorsed by one Voorhies, which were delivered up and a suit which had been commenced on them discontinued. The court held, 1st, that there had been no diversion of the note from the purpose for which it was made and indorsed; and 2dly, that if there had been, the plaintiffs would still be entitled to recover as bona fide holders for value, within the principle of the *Bank of Salina* v. *Babcock. Securities* had been given up. *Stalker* v. *McDonald* (6 *Hill,* 93) affirmed a judgment of the supreme court, to the effect that the holder of negotiable paper would not be protected as against the equities of third persons, when it appeared that the paper was received as a security for an antecedent debt, and the holder neither parted with value on the credit of it nor relinquished any previous security. This is probably the extent to which the case goes, as authority; but the chancellor, whose opinion is entitled to great weight, expresses the opinion that it would be the same if the paper were received nominally as payment. He does this upon a full review of all the cases, English and American, and giving to the cases in the 21st and 24th of Wendell their full effect as deciding correctly the questions presented by them, under the circumstances disclosed. *Small* v. *Smith* (1 *Denio,* 583) was somewhat similar in its circumstances to this case, omitting what was done by the defendants at their banking house after the transaction between them and Osborn had been consummated, and in the absence of the latter. The plaintiff had a debt against the maker of the note in suit, and pressed him for security, and agreed to take his note at one year indorsed by the defendant, and the note was procured and de-

livered accordingly. Judge Beardsley, in delivering the opinion of the court, held that it was error in the circuit judge to sub-mit to the jury whether the note was received in satisfaction of the prior *indebtedness,* as there was no evidence tending to show that fact. The case was decided. upon another point, *The Seneca County Bank* v. *Neass* (5 *Denio,* 329) simply re-cognizes the principle that the *satisfaction* of a precedent debt may form a valuable consideration for the transfer of negotia-ble paper. But the case was decided upon another ground, and the questions now presented were not considered by the court. *White* v. *The Springfield Bank* (1 *Barb. S. C. Rep.* 225) was not a well considered case, and, under the circum-stances, if they appeared upon that motion as they were developed upon the hearing of the case on the merits, the de-cision might well have been different, and yet been consistent with all the cases that had gone before it. *Stewart* v *Small* (2 *Barb. S. C. Rep.* 559) decided that a person could not be said to have parted with value for a note, when he had only given credit for the amount of it upon the note of an insolvent party — paper which he knew to be of no value. And that is all that has been done by the defendant in this action upon the credit of the drafts which they claim to retain and enforce against the plaintiffs. The case cited was decided by Judges Cady, Willard and Edwards, and the argument of Judge Cady is entirely applicable to the facts of this case. In *Montross* v. *Clark* (2 *Sandf. S. C. Rep.* 115) the note in suit was trans-ferred to the plaintiffs in *part payment* of a note they held against the payee; and Judge Sandford instructed the jury that if the note had been diverted from the purpose for which it was made by the defendant and lent to the payee, the plain-tiffs could not recover; thus directly affirming the doctrine of *Rosa* v. *Brotherson,* and the other cases cited. Of course what Vanderpoel, J. said upon this point — the plaintiff hav-ing recovered — is entirely *obiter,* and the remark was not as well considered as it would have been if it had been material to the case. *Spear* v. *Myers* (6 *Barb.* 445) was decided by

Farrington *v.* The Frankfort Bank.

Judges Jones, Edmonds and Edwards, and distinctly reaffirms the doctrine of *Rosa* v. *Brotherson,* that parties who receive a note which has been improperly put in circulation, in payment of an existing debt, without parting with any value for it at the time, or surrendering any securities, are not entitled to hold it, as against the rightful owner. The plaintiffs had received the note from Knapp, their debtor, in payment of their debt, gave him a receipt for it, and balanced the accounts on the books. This is certainly as much as was done by the defendants here; for their cancelling iron was of no more force as applied to the papers, than was the receipt given to the party. Both acts were open to explanation. (*Watervliet Bank* v. *White,* 1 *Denio,* 608.) *White* v. *The Springfield Bank,* which was before Judge Edmonds, in 1st Barbour, was before the superior court of the city of New York on its merits, and is reported, 3 *Sandf. S. C. Rep.* 222. The case was one of an absolute discharge of a precedent debt, and also one in which the defendants, having collateral securities to a given amount and which covered the draft given up, on the receipt of the note of the plaintiff, made other advances in lieu of the advances made upon the draft, and which further advances fully exhausted the collaterals, so that the defendants made a case of very strong equity. By acting upon the faith and credit of the plaintiff's note they had parted with value, and unless permitted to retain the note they would be the losers, to its full amount. But in this case the defendants are in as good a situation, if they are compelled to surrender the bills indorsed by the plaintiff, as they would have been if they had never taken them. They parted with nothing, and if they can collect the drafts they are by so much the gainers by the experiment. *Youngs* v. *Lee,* (18 *Barb.* 187,) affirmed 2 *Kern.* 551, was well decided in accordance with the previous decisions of the courts of this state. In consideration of the note in suit, the plaintiffs had withdrawn from the bank another note of the party from whom they received this note before its maturity, and surrendered it to the maker. In other words,

they had taken it in satisfaction of a debt not yet due and surrendered the evidences of that debt, and the decision in the court of appeals was put upon this ground alone. Judge Johnson says : " In the case before us, the note was received in extinguishment of a demand upon a note not yet due, and the note was delivered up. The surrender, upon the consideration of a security not due, extinguishes the security. The plaintiffs, therefore, became holders for value, and are entitled to recover."

There was nothing in this case like the surrender of any security by the defendants upon receiving the drafts indorsed by the plaintiff. The transaction, as between them and Osborn, was complete when the latter delivered to them the drafts. No other act was necessary, or was contemplated, to vest the title to the drafts in them, and they were then the holders of both sets of securities. The one was therefore collateral to the other, as found by the judge. . The subsequent acts of the defendants were performed by their own volition and not at the request of, or for the benefit of, any third party, or in performance of any part of the agreement under which they acquired title to the paper. Their own acts cannot be resorted to, to fortify their own title. They were, however, of no legal importance, even if done with the knowledge and assent of Osborn. The equities of the plaintiff are very manifest, and the defendants have failed to show a legal title to the drafts, which can overcome them.

The objection to evidence of what passed between Osborn and the plaintiff, at the time the indorsements were procured, is clearly untenable. The gist of the action, and the foundation of the plaintiff's equities, are the false representations of Osborn, and to shut out the evidence of the declarations of Osborn, made in the commission of the fraud, would be simply to debar the injured party of all relief. The complaint does not necessarily mean that the representations were made in the presence of the defendants' cashier ; and if it did, that part of the averment would be immaterial, so far as the case

Farrington *v.* The Frankfort Bank.

upon which relief was finally granted is concerned, and might well have been disregarded, or considered as struck out as surplusage.

The proof offered, of the purpose for which the drafts remained in the possession of the defendants after the 19th of January, 1856, was inadmissible, as only tending to show the understanding of the defendants of the agreement and the resulting legal rights of the parties, and this too after *lis mota,* the practical construction of the agreement by the defendants after suit brought.

The offer of the defendant to contradict Osborn as to an immaterial fact, to wit, the circumstances attending another transaction—a prior loan from the defendants of $4000—with which the plaintiff was not connected, was properly excluded. As to that matter the defendants had made Osborn their own witness, and were not allowed to contradict him by way of impeachment. So, too, the evidence offered that the witness for the defendant refused to swear, in the affidavit which was introduced with a view to discredit him, to something much more favorable to the defendants and much more discordant with his evidence on the trial than was actually sworn to by him in the affidavit, was not competent, as it did not explain the facts stated in the affidavit, or tend to qualify them or explain or account for the discrepancy, if any existed, between the statements in the affidavit and the evidence given on the trial.

These are all the questions, and all the exceptions which were made by the counsel for the defendants in his printed points, or presented by him upon the argument; and I am unable to discover any error calling for a reversal of the judgment.

The judgment must be affirmed, with costs.

[ONEIDA GENERAL TERM, January 5, 1857. *Hubbard, Pratt, Bacon* and *W. F. Allen,* Justices.]