## ROSS *vs.* DRINKARD'S ADM'R.

[ACTION ON BILL OF EXCHANGE, BY ENDORSEE AGAINST ACCEPTOR.]

1. *Burden of proof as to payment of valuable consideration.*—In an action on a bill of exchange, by an endorsee against the acceptor, proof by the defendant that the bill was procured by fraud, or that there was a want or failure of consideration, casts on the plaintiff the burden of proving that he paid a valuable consideration for it.

2. *What constitutes fraud in procurement of bill.*—Procuring the execution of a bill of exchange by falsely representing that it is only an ordinary note, when the party making the representation knows it to be untrue, and the other party, confiding in the truth of the statement, is thereby misled, constitutes a fraud on the latter, against which he is entitled to relief, as against an endorsee who did not pay value, to the extent of the injury done by it.

APPEAL from the Circuit Court of Marengo.
Tried before the Hon. PORTER KING.

THIS action was brought by the administrator of Jeremiah Drinkard, deceased, against Andrew D. Ross; and was founded on two bills of exchange, each for $260, drawn by one John T. Brackinridge on the defendant, and by him accepted, dated the 25th December, 1856, and payable six months after date, to the order of said Brackinridge, by whom they were endorsed. The only plea was "the general issue, in short by consent, with leave to give in evidence any special matter of defense." On the trial, as the bill of exceptions shows, the plaintiff read in evidence the bills which were the foundation of the action, "and then introduced evidence tending to show that his intestate was the holder of said bills, and had the same in his possession, some time in March, 1857, before their maturity." The plaintiff having here closed, the defendant adduced evidence showing, substantially, these facts: That said bills of exchange were given for the purchase-money of the patent-right for "Hollingsworth's improved washing-machine," for the counties of Clarke and Monroe in this State, which was sold to said Brackinridge by one Osborne, as the agent of one A. B.

Pierson ; that by the terms of the contract of sale, "the purchase-money was to be secured by Brackinridge, by giving his promissory note, with the defendant, Ross, as his surety ; that the bills of exchange, which were printed forms, were prepared by Osborne, and were called notes by him, Brackinridge and Ross ; that Brackinridge signed the bills under the impression that they were notes, and that Ross was signing as his surety ; and that Osborne told them that, owing to the peculiar way in which the papers were drawn up, Ross, as the surety, must write his name across their face." It was shown, also, that before the plaintiff's intestate acquired the bills, he had a conversation with the defendant relative to them ; but the evidence was conflicting, as to what passed between the parties during that conversation ; "and there was no evidence tending to show that said intestate paid anything for the bills, further than the fact that he held them as his own before maturity." There was some evidence tending to show a partial failure of consideration.

"The court charged the jury, that when a plaintiff shows that he is the holder of endorsed mercantile paper before it falls due, the law presumes that he holds it *bona fide*, and for a valuable consideration ; and if the jury believe from the testimony that the plaintiff's intestate was the *bona-fide* holder of said bills of exchange before their maturity, without notice of any equity, set-off, payment, fraud, or failure of consideration, existing between or against any of the original or intermediate parties to said bills, then they must find for the plaintiff, for the amount of said bills and interest thereon."

The defendant excepted to this charge, and then requested the following charges :

"1. If it is shown that the bills of exchange were made without consideration, or that the consideration has failed, or that the bills were fraudulently or improperly put in circulation, then the plaintiff is not entitled to recover, unless it is proved that the plaintiff's intestate acquired the bills before they were due, and paid value for them.

"2. When a state of facts is proved, from which a failure of consideration is to be inferred, it rests with the

plaintiff to avoid the consequences of such proof, by showing that the bills of exchange came to the hands of his intestate, for value paid, before they were due; otherwise, the plaintiff is not entitled to recover.

" 3. If there was a failure of consideration of said bills, or fraud in their execution, then the law requires the plaintiff to show that his intestate acquired them for value paid.

" 4. If the bills were fraudulently imposed upon the defendant, as and for promissory notes, and he was induced to sign said bills as acceptor by the false and deceitful representations of Osborne, under the belief that they were promissory notes, then the plaintiff is not entitled to recover.

" 5. If the bills were fraudulently imposed upon the defendant, as and for promissory notes, and he was induced to sign said bills as acceptor by the false and deceitful representations of Osborne, under the belief that they were promissory notes, then the plaintiff is not entitled to recover, unless it is shown that his intestate paid value for them."

The court refused each of these charges, and the defendant excepted to their refusal; and he now assigns as error all the rulings of the court below to which he reserved exceptions.

Wm. M. Brooks, and Jas. D. Webb, for the appellant. A bona-fide 'holder of mercantile paper, procured for a valuable consideration before its maturity, takes it exempt from all defenses or equities existing between the original parties; and when the holder acquires the paper before maturity, the law ordinarily presumes that he obtained it for a valuable consideration. But, when the defendant has shown fraud, or failure of consideration, this presumption is repelled, and the holder becomes bound to prove that he paid value for the paper.—Chitty on Bills, 80–83, 725–26; Byles on Bills, 35; Duncan v. Scott, 1 Camp. 100; Rees v. Marquis of Headfort, 2 Camp. 574; Mills v. Barber, 5 Dowl. 77; Bailey v. Bidwell, 13 Mees. & Wels. 76; Heath v. Evans, 2 Barn. & Ald. 291. The

American authorities are equally explicit in asserting the same doctrine.—Vathier v. Zane, 6 Grattan, 246; Holme v. Karspar, 5 Binney, 469; Ball v. Allen, 15 Mass. 433; Rogers v. Moreton, 12 Wendell, 487; Story on Bills, § 193.

In this State, the principle has been frequently decided, "that where it is shown that the instrument was made without consideration, or has been fraudulently or improperly put in circulation, the holder will be required to prove that he gave value for it, and that he acquired it before it was due."—Thompson v. Armstrong, 7 Ala. 256; Marston v. Forward, 5 Ala. 347; Wallace v. Br. Bank at Mobile, 1 Ala. 565; Boyd v. McIvor, 11 Ala. 822; Hanrick v. Andrews, 9 Porter, 9. The case of Minell & Co. v. Reed, 26 Ala. 730, is contrary to all the previous decisions of this court, and is not supported by either one of the cases therein cited. In Swift v. Tyson, (16 Peters, 1,) the holder had acquired the note before maturity, *bona fide*, and in payment of a pre-existing debt; and the only question in the case was, whether such a debt constituted a valuable consideration in law as applicable to negotiable instruments. The court held, that it did; but, as the consideration was clearly proved by the holder, no question could arise as to the burden of proof. In the other case, (Pond v. Lockwood, 8 Ala. 669,) the consideration was clearly established; and the question was, whether a pre-existing debt was a sufficient consideration to deprive the defendant of his defense.

The authorities above cited further show, that when the holder, under the circumstances supposed, has paid value for the bill, he can only recover to the extent of the amount of his payment.

Jno. T. Lomax, *contra.*—1. The charge of the court is sustained by Minell & Co. v. Reed, (26 Ala. 732,) which is fully supported by Goodman v. Simonds, (20 Howard, 363,) where the point is distinctly presented and argued, and many authorities cited. The cases of Wilson v. Lazier, (11 Grattan, 477,) and Knight v. Pugh, (4 Watts & S. 445,) affirm the same principle upon the authority of

the modern cases. These authorities are clear to the point, that the holder can only be put on proof where *mala fides* in the negotiation of the bill has been shown; and many of the cases cited for the appellant go to that extent only. Edwards, in his recent work on Bills, (p. 311,) devotes a chapter to the subject of consideration, and lays down no such principle as that affirmed by Story.

2. The proof does not show that Brackinridge was defrauded in making the bills. The object was to secure the payment of the purchase-money, and he was bound to know the legal import and effect of the paper which he executed.—Townsend & Milliken v. Cowles, 31 Ala. 428, and authorities cited.

A. J. WALKER, C. J.—The charges given and refused by the circuit court present two questions. Those questions are, whether the endorsee of a bill of exchange, who obtains it before maturity, has the *onus* cast upon him of proving that he was a purchaser for value, when it is shown that there was either a want of consideration between the original parties to the bill of exchange, or a failure of consideration; and whether such endorsee has the *onus* cast upon him of proving that he paid a valuable consideration, when it is shown that the bill was procured by fraud.

It seems to be a doctrine of universal acceptance, in the English law, that where a bill has been procured by fraud, felony, or duress, the *onus* of proving the payment of value devolves upon the endorsee.—Duncan v. Scott, 1 Camp. 100; Rees v. Headfort, 2 *ib.* 574; Bailey v. Bidwell, 13 Mees. & Wels. 72; Berry v. Alderman, 5 J. Scott, 95, (14 C. B. 78 E. C. L.) 94; Byles on Bills, 88, (61 L. L.) 121; Chitty on Bills, 648. The American decisions are generally, and the decision by this court in Wallace v. Bank, 1 Ala. 565, to the same effect.—Holme v. Karsper, 5 Binney, 465; Rogers v. Morton, 12 Wend. 484; Vathier v. Zane, 6 Gratt. 247.

Upon the point as to the effect of a want or failure of consideration between the original parties, the English authorities are not so uniform. We find it was decided

by Lord Tenterden, in 1827, that the want of considera-
tion for a bill being shown by the defendant, it was thrown
upon the plaintiff, a second endorsee, to prove that he
gave value for it, or that value was given by his immedi-
ate endorser.—Thomas v. Newton, 2 Car. & Payne, 606,
(12 E. C. L. 285.) This decision was followed, in 1831,
by the case of Heath v. Sanson, in the king's bench, in
which three of the judges, including Lord Tenterden,
against one dissenting, indicated the opinion, that it was
incumbent upon the endorsee to prove a valuable consid-
eration for his endorsement, whenever it appeared that
the paper was taken under such circumstances as that the
endorser himself could not recover. All the judges concur-
red in the opinion, that if the bill was originally procured
by fraud, the proof of value paid by the endorsee was in-
dispensable.—2 Barn. & Ad. 291. This last decision was
reviewed, and overruled so far as the effect of proving a
want of consideration was concerned, in the latter case of
Whitaker v. Edmunds, 1 Mood. & Rob. 366.—See the re-
port of this case in Chitty on Bills, m. p. 618, note *h ;*
S. C., 1 Ad. & El. 638 ; Greenleaf's Over. Cases, 171. The
case of Mills v. Barber, 1 Mees. & Wels. 425, was decided
in the exchequer, in 1836, after great consideration, and
after consultation with the court of king's bench. Two
of the judges of the court of king's bench retracted the
opinions given by them in Heath v. Sanson, and the court
of exchequer decided, " that where there is no fraud, nor
any suspicion of fraud, but the simple fact is that the de-
fendant received no consideration for his acceptance, the
plaintiff is not called upon to prove that he gave value
for the bill." This decision has been followed in all the
later English cases.—Bailey v. Bidwell, 13 Mees. & Wels.
72 ; Robinson v. Reynolds, 2 Ad. & Ellis, (N. S.) 634 ;
Smith v. Braine, 16 Ad. & El. (N. S.) 244, (71 E. C. L.
242 ;) Berry v. Alderman, 5 J. Scott, 95, (78 E. C. L. 94.)

The doctrine asserted in Addison on Contracts, (989–990,)
and Byles on Bills, (88,) is consistent with these late Eng-
lish decisions, and is thus stated in the latter work : " It
was formerly held, that the defendant could call on the
plaintiff to prove consideration, by showing the bill to

be an accommodation bill, or that the defendant received no value. But it is now definitely settled by all the judges, that mere absence of consideration received by the defendant will not entitle him to call on the plaintiff to prove the consideration which the plaintiff gave." This may be considered a correct statement of the law on this point, as it is now understood and received in England.

The decisions in New York, Pennsylvania and Virginia, assert the same doctrine.—Morton v. Rogers, 14 Wend. 575; Rogers v. Morton, 12 ib. 484; Holme v. Karsper, 5 Binney, 465; Knight v. Pugh, 4 Watts & Ser. 445 ; Vathier v. Zane, 6 Grattan, 246; Wilson v. Lazier, 11 Grattan. 477. We do not understand the decision in Goodman v. Simonds, (20 Howard, 343,) as affecting the question in hand. The opinion in that case does not touch the question of the *onus* of proof in reference to the endorsement.

After this review of the law as recognized in England and in some of the other States, we come to our own decisions. This court has, as may be gathered from its decisions in Wallace v. Bank, (1 Ala. 567,) Marston v. Forward, (5 Ala. 347,) Thompson v. Armstrong, (7 Ala. 256,) and Boyd and Mason v. McIver, (11 Ala. 822,) unequivocally asserted, that fraud in putting a bill in circulation, or the want or failure of consideration, would cast upon the endorsee the burden of proving the payment of value. Neither the opinion in Pond v. Lockwood, (8 Ala. 674,) nor Minell v. Reed, (26 Ala. 730,) is in conflict with those decisions. The former of those cases discusses the question as to what are the rights of a holder for value, but does not touch the question of the *onus* of proof as to the valuable consideration of the endorsement. The latter case pertains to a payment made to the payee of a note after its endorsement. It is very clear that the presumption in favor of the payment of value by the endorsee could not be affected, by anything which might transpire between the original parties to the note or bill after its endorsement.

The law upon the main points of this case has been, as we have seen, the subject of adjudication in this court

many years ago; and there has been no cloud of doubt thrown over those cases by any subsequent decision. Although we find those adjudications inconsistent with the law as it now exists in England, and in several of the sister States, we deem it our duty to abide by them.   To overrule them, would, perhaps, tend to give our jurisprudence a prejudicial character for instability, and interfere with subsisting rights, by establishing a rule of evidence, the anticipation of which was prevented by the decisions of this court, and in reference to which the parties did not shape their conduct. We decide, therefore, that it is the law of this State, that when the drawer or acceptor of a bill of exchange has proved that it was procured by fraud, or that there was a want or failure of consideration, the presumption that the endorsee paid value is overcome, and it is incumbent upon him to prove that fact, before he can claim the protection which is vouchsafed by the law to a purchaser for value without notice.

[2.] We do not deem it necessary to criticise the charges, as to what would constitute a fraud in the execution of the bill.   We deem it sufficient for the guidance of the court upon a future trial to say that, if the person who took the bill, procured it by a false statement that it was an ordinary note, when he knew it to be a bill of exchange; and if the parties who gave the bill, did it in ignorance that it was a bill of exchange, and, trusting in the statement made to them, were misled by it,—a fraud has been committed, and the defendant would be entitled to relief, to the extent of the injury done by the fraud, as against an endorsee who did not pay value. We think the law upon this point is correctly stated in Townsend & Milliken v. Cowles, (31 Ala. 428,) in the following words: "If the defendant was in fact ignorant of the law, and the other party, knowing him to be so, and knowing the law, took advantage of such ignorance to mislead him by a false statement of the law, it would constitute a fraud." It is conceivable that injury might result from a fraudulent representation that a bill of exchange was an ordinary promissory note; for, under our law, the incident of damages upon protest does not attach to notes, and the makers

29

of such notes are not precluded from making defenses existing between the original parties, when they have passed into the hands of an innocent holder, as is the case with bills of exchange, which are governed by the commercial law.

The judgment of the court below is reversed, and the cause remanded.