Stewart *v.* Small.

delay; and as there is no power, when the court have awarded it, to stay proceedings upon it, all the orders to that effect in this case must be vacated, and the writ be obeyed. An order must be entered, directing that the order made at the special term, permitting the defendants to make up a record, as upon a demurrer, be vacated, and that the record by them made, on the 16th of March last, be taken from the files of the court; and that the defendants' application to set aside the relator's record be denied; and, directing further, that all orders made upon the application of the defendants, staying proceedings on the peremptory writ of mandamus, be set aside, and declared null and void; and that the defendants' application to set aside the peremptory writ of mandamus be denied, and that said writ be by them forthwith, and without delay, obeyed.

SAME TERM.   *Before the same Justices.*

STEWART *vs.* SMALL and others.

Where a person's signature to a note, as surety for another, is obtained by fraud and false pretences, that circumstance avoids the note in the hands of a holder who has received the same without paying any consideration therefor.

It cannot be said that a person has parted with value for a note, when he has only given credit for the amount of it, upon a paper which he knew to be of no value.

IN EQUITY. This was an appeal, by the plaintiff, from a decree of the vice chancellor of the first circuit, dismissing the bill with costs. The bill alleged that in January, 1843, the defendants were doing business together as merchants, in the city of New-York, under the firm of Small, Williams & Co., and as such had a large demand accruing on account of goods sold and delivered, and otherwise, against Wm. L. Reynolds, of the town of Pittsford, Monroe county; that Reynolds was then, and for a long time previous, had been in possession and osten-

sibly the owner of, a dwelling house, store and lot, and a large warehouse, dwelling-house, ashery and lot, situate at Pittsford, worth, in the aggregate, from five to seven or eight thousand dollars; that he was during the same period engaged in the mercantile business, and during the year next preceding the said month of January, in company with one Alexander Voorhies, who was reputed to be a man of considerable wealth; that sometime in December, 1842, or January, 1843, Reynolds applied to the plaintiff to become his surety upon a note to the firm of Small, Williams & Co. for $1000; that the plaintiff told him, in substance, that he was ignorant of his responsibility, and could not consent to sign such a note for him; that Reynolds then represented that the capital on which he and Voorhies were doing business was all his, and that he was the owner of the real estate before mentioned, which was free from incumbrances; that he owed Small, Williams & Co. only about $4000, and that he owed nothing besides, except a few small debts, which he had the means of paying; that the plaintiff, confiding in these representations, consented to become his surety to Small, Williams & Co. on a note for $1000; that Reynolds then drew a promissory note for that sum, payable to the firm six months after date, and signed the same himself, and that the plaintiff thereupon signed the note as surety, and delivered it to Reynolds for the purpose of being handed over to the firm; that the plaintiff received no consideration whatever, either from the firm, or from Reynolds, or any other person, for signing such note; that he was induced to sign the same solely by the representations of Reynolds; and that if those representations had been true, Reynolds would have been been abundantly able to indemnify him against the payment thereof.  That Reynolds, previous to the execution of the note, had conveyed all his real estate above mentioned to the said firm, or one of the members thereof; and that he had also assigned his interest in the goods in the store, and most of his other personal property to such firm, or one of its members. That at the time Reynolds made the representations to the plaintiff he was utterly insolvent, as he well knew, and wholly

unable to indemnify the plaintiff against the payment of the note, and that he obtained his signature thereto fraudulently and by means of such false representations. That Reynolds, soon after the execution of the note, caused the same to be delivered to Small, Williams & Co., and that it was received by them in security for, or on account of their demand against Reynolds; that nothing was advanced by the firm to Reynolds, for or on account of the note, at the time it was received; and that the firm has at no time made any advances for or on account of any promissory note; and that therefore the firm are not the bona fide holders of the note for value. That they were apprized, at the time they received the note, that the plaintiff had signed the same only as surety, and that they, or one of them, well knew, at that time, that Reynolds was insolvent and unable to pay the same. The plaintiff insisted that under the circumstances of the case the defendants had no right to enforce the note against him; and he prayed that they might be restrained from selling, or in any manner disposing of, or transferring the said promissory note; and for general relief.

The defendants stated in their answer that in December, 1842, and in January, 1843, Reynolds was indebted to them in the sum of $1300, upon a draft drawn by him upon them, which they had accepted and paid out of their own funds; and that Reynolds offered them the note in question in payment of that indebtedness; he stating to them, at the time, that the note and the guaranty or signature of the plaintiff as surety, were good and valid, and were obtained for the express purpose of paying his indebtedness to the defendants, upon the draft. That the defendants received the note in payment of R.'s indebtedness, and credited him with the amount, upon their books, and upon his draft. That the defendants had no knowledge or information, and no grounds of suspicion, that the note and guaranty were not perfectly good and valid, and obtained for the express purpose of being paid to them; and. that they had no knowledge or information, or suspicion, of the matters alleged in the bill of complaint, by which the plaintiff sought to be released as surety on the note. The defendants insisted

that this was not a matter within the jurisdiction of a court of equity ; and that the bill was defective in not making Reynolds a party defendant.

A replication was filed, and the cause was heard before the vice chancellor, upon pleadings and proofs. Reynolds was examined as a witness by the plaintiffs, although objected to by the defendants. The vice chancellor made a decree declaring that Reynolds was a competent witness for the plaintiff; that the note in question was not obtained from the plaintiff by any fraud, and that the defendants were the bona fide holders thereof, for a valuable consideration ; and dismissing the plaintiff's bill, with costs.

*O. Hastings,* for the plaintiff. Reynolds is not a necessary party, because his liability will not be affected by the event of the suit. As Stewart is merely a surety, Reynolds is bound to pay the note, and neither has, nor can have, any claim for contribution, or any other claim against Stewart on account of his paying the note. The matter set up in the bill goes only to the personal discharge of Stewart and not to the destruction of the note. The note is joint and several. Reynolds may be sued alone by the holders of the note. (*Miller* v. *McCan,* 7 *Paige,* 452.) Reynolds is a competent witness. His interest will not be affected by the result of the suit. (*Miller* v. *Mc-Can, supra.*) The signature of the plaintiff, to the note in question, was procured by the fraudulent representations of Reynolds. The defendants participated in the *fraud* by which the plaintiff's signature to the note in question was obtained. 1st. By allowing Reynolds to remain the ostensible owner of the real and personal estate conveyed by him to them. 2d. By receiving the note, with the knowledge that it was signed by the plaintiff as surety, and of Reynolds' utter insolvency. The endorsing of the note upon Reynolds' draft was evidently a mere contrivance to bring this case within the class of cases in which our court have held that when a debt has been discharged in consideration of the transfer of a note, such discharge is equivalent to the payment of money, and constitutes the

Stewart v. Small.

transferee a bona fide holder for value. The endorsement of the note upon Reynolds' draft was not, under the circumstances, a satisfaction pro tanto of the draft. (*Stalker* v. *McDonald*, 6 *Hill*, 113.) The objection taken, in the answer, to the jurisdiction of the court, cannot prevail. The bill is sustainable as an injunction bill, to restrain the defendants from negotiating the note, and on the ground that the defendants, by joining Reynolds and the plaintiff in an action at law, would prevent the former from availing himself of the testimony of the latter.

*J. W. Gerard*, for the defendants. The note in question having been made expressly to enable Reynolds to pay an old debt due to Small, Williams & Co. and even the date being left blank for that purpose, and it having been applied to the purpose for which it was created, the plaintiff is estopped from showing any circumstances taking place between him and Reynolds, which induced him to sign the note. (*Bank of Rutland* v. *Buck*, 5 *Wend.* 67. 2 *Phil. Ev. Cowen & Hill's Notes, p.* 199, *note* 192.) The note having been accepted by Small, Williams & Co. as payment, pro tanto, for the draft, and having been so endorsed thereon, whereby Reynolds was released from so much of that draft, that is a bona fide and valuable consideration, which cuts off all inquiry as to the circumstances under which the plaintiff was induced to give the note. (*Bank of Salina* v. *Babcock*, 21 *Wend.* 499. *Bank of St. Albans* v. *Gilliland*, 23 *Id.* 312. *Bank of Sandusky* v. *Scovill*, 24 *Id.* 115. *Mohawk Bank* v. *Corey*, 1 *Hill*, 513.) If, however, Small, Williams & Co. are to be visited with the fraud, if any, of Reynolds in obtaining the note, no such fraud is proved. There was no demand of the note, or of a release, before suit brought. This should be done before the plaintiff can maintain his bill. The *reception* of the note by the defendants was not tortious; or if this principle does not go to this extent, it at least frees the defendant from all liability for costs.

*By the Court*, CADY, P. J. The note in controversy, for the purposes of this suit, must be regarded as made by the plaintiff

as surety for William L. Reynolds, to the defendants. It was in fact made to one of the firm. The ground upon which the plaintiff asks for relief, is that his signature to the note was obtained by fraud or false pretences made to him by William L. Reynolds, who made the note as principal. The plaintiff alleges in his bill that when W. L. Reynolds applied to him to sign the note he represented that the capital on which he and Mr. Voorhies were doing business was all *his*, and that he was the owner of the real estate then in his possession and that it was free from incumbrances; that he owed the defendants only about $4000, and that he owed nothing besides, except a few small debts which he had the means of paying. The note bears date on the 26th of December, 1842, and it was proved by Helen Canfield that on the 28th of November, 1842, W. L. Reynolds applied to the plaintiff to sign a note for $4000, and then made representations in substance like those alleged in the bill. Very shortly after Reynolds made that application to the plaintiff he conveyed all his real and personal estate to the defendants, or one of them, and remained indebted to them in the sum of $8000 or $9000. This was proved by Reynolds. And the conveyance of the real estate, and the assignment of the personal estate, was also proved by the declaration of Isaac Small, one of the defendants, made to Alexander Voorhies, in March, 1843. And it is thus proved that when the plaintiff's signature to the note in question was procured, Reynolds knew that he was utterly insolvent; and he must have asked the plaintiff to sign the note, with the intent to defraud him for the benefit of the defendants. The declarations of Isaac Small, one of the defendants, made to Alexander Voorhies in March, 1843, show that he knew at the time the note was received by the defendants, that Reynolds was insolvent. He claimed that the assignment made by Reynolds to the defendants was so general that he, Reynolds, had not reserved "the shirt to his back." It is insisted on the part of the defendants that the plaintiff has failed to show that the representations alleged in the bill to have been made by Reynolds at the time the plaintiff signed the note were then made with a view to induce the

plaintiff to sign the note in question, and if made at all were made a month before the plaintiff signed the note, and to induce him to sign a larger note. A decree of this court must always be founded on the allegations in the pleadings, and the proofs in the cause. (*James* v. *McKernon,* 6 *John. Rep.* 359.) It is an invariable and universal rule of the court of chancery to found its decrees on some matter put in issue between the parties by bill and answer. It is true that at the time Reynolds applied to the plaintiff to sign the note in question, he did not make *all* the representations alleged in the bill, but he did then make a material and substantial part of them. He did then say "that he would protect the note; that he had the *means,* and that those means consisted of what was in the store. What was in the store was included in the representations alleged in the bill; and according to W. L. Reynolds' own testimony he did, in order to induce the plaintiff to sign the note, represent that he had the means to pay the note, and that those means consisted in what was in the store." This was *a false pretence.* He had before assigned to the defendants all his interest in whatever was in the store. And this false pretence as effectually vitiated the note as any number of false pretences would have done. That the plaintiff's signature was obtained by fraud is therefore sufficiently proved; and the only question in the cause is, does that avoid the note in the hands of the defendants? The defendants gave no consideration for the note; they only gave credit for its amount on a draft made by Reynolds, whom they knew to be utterly insolvent, and from whom they had shortly before obtained an assignment of all he had, but left him in possession; which enabled him to deceive and defraud the plaintiff. And if the plaintiff is discharged from the note, the defendants can hold it as against Reynolds; and it will be as valuable as the draft on which they allege they gave credit for the note. The case of the *Bank of Rutland* v. *Bush,* (5 *Wend.* 67,) is not like the present. There was no fraud in obtaining the signature of the defendant in that case as endorser to the note, and upon that ground the court held the endorser liable. In the case of the *Bank of Sa-*

*lina* v. *Babcock and others,* (21 *Wend.* 499,) the bank cancelled notes on which were *responsible endorsers ;* and the court held that that was *parting with value.* The defendants in this case knew they parted with no value when they gave Reynolds credit on a draft which they knew to be worthless. In the case of the *Bank of St. Albans* v. *Gilliland,* (23 *Wend.* 311,) the note was received in full satisfaction of the indebtedness of the persons who passed the note, and their indebtedness was cancelled. But there was not evidence, as in this case, that the persons who passed the note were worth nothing. Although they had failed, it does not follow that a demand against them was worthless. It is idle to say that a party has parted with value for a note, when he has only given credit on a paper which he knew to be of no value. In the case of the *Bank of Sandusky* v. *Scoville,* (24 *Wend.* 115,) the debt of a *solvent* party had been in part discharged. So in the case of *The Mohawk Bank* v. *Corey,* (1 *Hill,* 513,) notes against a solvent endorser were given up. None of these cases referred to by the defendants' counsel, meet this case. The defendants have not parted with any thing of the least value.

The decree of the vice chancellor must be reversed with costs, and the defendants be perpetually enjoined from suing the plaintiff on the note.

