## THE COMMERCIAL BANK OF CLYDE, APPELLANT, *v.* THE MARINE BANK, RESPONDENT.

*Receiver of Note for collection, though drawn against, not Purchaser for Value.*

A banker, receiving from another notes for collection, obtains no better title to them or their proceeds than the remitting bank had, unless such collecting bank becomes a purchaser for value without notice of any defect in title.

Merely having a balance against the remitting bank, for which it had refrained from drawing, according to custom between such banks, relying upon such collection to balance the same, does not constitute the collecting bank a purchaser for value.

PARKER, J.—The Plaintiff is a corporation doing business at Clyde, in this State, and the Defendant is also a corporation doing business at Milwaukee, Wisconsin.

In April, 1857, Miller, Powell & Co. drew a draft on one Crocker, of Milwaukee, for $411.96, payable at sixty days, to the order of the Plaintiff, and delivered it for value to the Plaintiff. The Plaintiff endorsed and sent said draft to John R. Lee & Co., who were bankers at Buffalo, for collection, and on the 11th of April, Lee & Co. endorsed and sent it to the Defendant for collection.

On the 14th of May, 1857, Lee & Co. failed, and have ever since been insolvent.

The Defendant and Lee & Co. had each been, from about the 1st of April, 1856, to the 14th of May, 1857, the commercial and banking correspondents and agents of the other, and during that time had done business, each for the other, in the collection of drafts and commercial paper, and otherwise. It was their usage and custom to receive and collect drafts and notes, and to credit, each to the other, the proceeds of such drafts and notes when collected, deducting therefrom the charges and expenses of collection. Accounts current were exchanged from time to time between them, and settlements made in accordance with such custom and usage.

The draft in question was received by the Defendant on the 13th, and accepted by Crocker on the 14th of April, 1857.

Between the 14th of April and the 14th of May the Defendant,

in the usual course of business, sent to Lee & Co., for collection, a certificate of deposit, issued by the International Bank of Buffalo, for $200, and a check drawn on said bank for $63.25, both of which were collected by Lee & Co., and placed to the credit of Defendant; and they also collected between those dates a draft, which had in like manner been previously sent them for collection, for $175, which was also placed to the Defendant's credit. And between those dates the Defendant had collected and placed to the credit of Lee & Co. paper forwarded by them, in the usual course of business, for collection, to the amount of $200.

On the 3d day of June, 1857, the Defendant collected the said Crocker draft of the drawer, and credited the amount of such collection, less one per cent. charges (being $407.85), to Lee & Co. On the day before the payment of the draft, Lee & Co. were indebted to the Defendants in the sum of $743.70, leaving a balance, after deducting the proceeds of the draft, of $65.85. On the 9th of June Defendant collected a draft—which it had received from Lee & Co. for collection, as usual—the net proceeds of which, amounting to $67.47, after paying a portion thereof which was claimed by a third party, was placed to the credit of Lee & Co. On this latter day the Plaintiff gave Defendant notice of its claim to, and demanded payment of, the proceeds of the Crocker draft, and Defendant refused to pay the proceeds, or any part thereof, to the Plaintiff.

Evidence was given tending to show that, after the middle of March, the Defendant did not intend to allow much balance in the hands of Lee & Co., beyond what paper Defendant had from them about to mature, though, both before and after April 14th, paper was sent to them in order to supply a fund on which Defendant might draw for such small amounts as were occasionally called from Buffalo; also that paper was sent and the prior balance allowed to remain, after the 14th of April, on the faith of the Crocker draft (which Defendant believed to belong to Lee & Co.) and the other paper, and for the other reason above stated.

Upon the trial the Plaintiff asked the Court to charge the jury that, unless the Defendant gave Lee & Co. some new credit, or

made advances, or parted with some value, on the credit of the Crocker draft, the Plaintiff was entitled to recover, which was refused. And the jury were instructed, that if the Defendant had transmitted any paper to Lee & Co. between the 14th of April and the 14th of May, on the faith of the Crocker draft, *or* if it delayed drawing the amount due it, by reason of having this draft, the Plaintiff was not entitled to recover; and that upon the evidence the Defendant was entitled to a verdict: and thereupon the Court directed a verdict for the Defendant.

Without reference to the question whether this judgment could stand upon the decisions of the Supreme Court of the United States, it is clear that it is not supported by the decisions of the Courts of this State.

It may be remarked that it is not so certain that the Defendant transmitted any paper to Lee & Co. for collection, on the credit of the draft in question, as to authorize the Court to assume it as a fact against the consent of the Plaintiff. But there is no pretence that paper to the whole amount of the proceeds of the draft was so sent; and even if the fact were admitted that the paper claimed to have been so sent was sent upon the credit of the draft; and if, as matter of law, it be admitted that Defendant had the right to retain, from the proceeds, an amount equal to the amount of paper so sent and collected, still the Plaintiff was entitled to recover the difference between the amount of the proceeds of the draft and the amount of paper so sent and collected. Under the decisions of this Court, the Defendant could not hold any portion of such proceeds to satisfy balances which it had suffered to lie in the hands of Lee & Co. on the credit of the draft.

This was very distinctly held in McBride *v.* The Farmers' Bank (26 N. Y. R. 450). The doctrine of that case is, that a bank receiving from another notes for collection, obtains no better title to them, or their proceeds, than the remitting bank had, unless it becomes a purchaser for value without notice of any defect of title; and that it is not a purchaser for value, by reason of its having a balance against the remitting bank for which it had refrained from drawing, in reliance upon a course of dealings

between the banks to collect notes for each other, each keeping an open account of such collections, treating all the paper sent for collection as the property of the other, and drawing upon the proceeds for balances at pleasure.

It is to be observed that the course of dealings between Lee & Co. and the Defendant did not authorize either to draw upon the other for the amounts of the paper sent, until collected ; the proceeds, after deducting the charges for collection, were alone credited, and no notes or drafts ever entered into their accounts until collected.    There is, then, no ground for saying that the draft in question ever belonged to the Defendant.    It was said in McBride v. The Farmers' Bank, " According to the decisions of the Courts of this State, Paul & Pritchard could have set up any defence to their notes in the hands of the Defendant that existed in their favor as against the Canal Bank, or the Farmers' and Mechanics' Bank ; and the Defendants had no title to the notes that enables them to retain the money they received thereon as against the true owner."

Precisely so in this case.    Crocker could have set up any defence to the draft in the hands of Defendant that existed in his favor as against Lee & Co. or the Plaintiff, so that the Defendant had no title to the draft that enables it to retain the money it received thereon against the true owner.    Even as between the Defendant and Lee & Co., no title to the draft ever passed to the Defendant. If it had not been paid, and had gone to protest, there is nothing in the case which would have entitled the Defendant to maintain an action upon it against Lee & Co.

If the Defendant had been at liberty, in pursuance of the general arrangement between it and Lee & Co., to credit the draft on receiving it, and had done so, to form a fund upon which Lee & Co. were entitled to draw immediately, as was the case in Clark v. The Merchants' Bank (2 Coms. 380), then the Defendant might, as against Lee & Co., have claimed ownership of the draft and of its proceeds.    In that case this distinction is made the criterion.    The Court say : " The material question, as stated by the Court below, is whether the bill in question was transmitted

20

[by the Plaintiffs who were the owners] to Smith & Co. [their business correspondents] for collection, merely, or was to be credited to the Plaintiffs when received by the former, whether collected or not." The Court below had held that it was not, by the course of dealings between the parties, to be credited until collected, while this Court held that the proper inference from the facts proved was, that it was to be credited when received. "The error of the learned judge, I apprehend," says Judge Gardiner, "consists in the assumption that nothing was credited to Clark & Co. [the Plaintiffs], in the course of business, until collected. This inference is opposed to the testimony of the only witnesses who speak as to the nature of the business and mode of transacting it, and to instructions of the Plaintiffs in the letter of the 15th of May." And it was because of that error that the judgment of the Court below, which gave the proceeds of the bill to the Plaintiff, was held erroneous and reversed.

The case of Scott *v.* The Ocean Bank (23 N. Y. R. 289) is based upon the same distinction. These cases, I think, warrant the conclusion that the Defendant, having acquired no title to the draft itself, cannot claim to hold, as against the true owner, any portion of the proceeds.

In regard to the case at bar, however, it is sufficient, and all that I am authorized by the Court to say is, that the Court below erred in assuming that Defendant had transmitted any paper to Lee & Co. on the credit of the draft, and in holding that if Defendant had delayed drawing the amount due it by reason of having this draft, the Plaintiff was not entitled to recover.

The judgment of the Supreme Court must therefore be reversed, and a new trial ordered.

All concur in result.

JOEL TIFFANY,
State Reporter.
