## N. Y. SUPERIOR ·COURT.

JOHN JAY. PHILBRICK, plaintiff, agt. HENRY C. DALLETT, et al., defendants.

Where it is alleged as a defense by the *acceptors of a draft*, that it was not only without consideration in fact, but in addition was procured by means of a fraud practiced upon the acceptors, and was passed to the holder before acceptance, it is error for the court, on the trial to exclude the evidence offered to prove such facts—the court holding that the plaintiff having given the draft and its acceptance in evidence it was sufficient evidence of its ownership, being in his possession, and it was unnecessary for him to prove its consideration. Assuming that the proof offered by the defendants, would establish the facts sought to be proved, it was not sufficient, as the case stood, to defeat a recovery on the draft:

*Held*, by the general term, on appeal, that where the acceptance is not only without consideration in fact, but procured by fraud practiced upon the acceptors, the mere taking of the draft on account of an antecedent debt, without giving up or surrendering something of value on the faith of its acceptance, is not enough to constitute the holder a *bona fide* holder for value as against the acceptors.

*General Term, April,* 1872.

*Before* BARBOUR, *Ch. J.,* FREEDMAN *and* SEDGWICK, *JJ.*

THE plaintiff, a resident of Key West, Florida, sues upon a draft of $10,000 drawn by Requelme & Co., of Havana, upon and accepted by the defendants, composing the firm of Dallett & Son, at Philadelphia, Pa., to the order of the plaintiff, and dated February 26th, 1869.

The answer contains a general denial of each and every allegation of the complaint, except such as is thereinafter specifically admitted, and then sets forth :

1st. That the drawers obtained the acceptance by fraudulent misrepresentations, upon which defendants relied, and of which the plaintiff was cognizant before such acceptance was made.

2d. That there was a failure of consideration between the

drawers and defendants, of which also the plaintiff knew before acceptance, and

3d. That the plaintiff never owed the bill or acceptance at all; that he never parted with any value or consideration for it, and that it had always remained the property of Requelme & Co., so far as any property in it could be said to exist.

Upon the trial before the court and a jury, plaintiff, as a witness on his own behalf, produced the draft, which was read in evidence, and proved its acceptance by defendants on the 18th day of March, 1869, and the interest due thereon.

The question put to him, " Are you the owner of that note ?" the court excluded as unnecessary, as possession of the draft was sufficient.

The court also declared it unnecessary for the plaintiff to prove the consideration of the draft in question.

Plaintiff thereupon rested.

The defendants, to maintain the issue on their part, called the plaintiff as a witness on their side, and from the testimony it appeared that some time in February, 1869, Mr. Requelme came to Key West and, while there, purchased from plaintiff a sunken steamer, called the *Ruby,* for which he promised to send plaintiff either a draft or the cash within ninety days; that no bill of sale was made of the vessel, nor any record concerning her in the custom house, or any other office in the United States government; that Mr. Requelme thereupon left for Havana, and thence remitted the draft in question, which had not yet been accepted; that the draft came accompanied by a letter which read as follows :

" Havana, 26th February, '69. John Jay Philbrick, Esq., Key West. Dear sir, herewith, $10,000 in cy., 60 days, on Dallett & Son, Phila., which you will please collect and hold at the disposal of our Senor Don Manl. Requelme. We are, dear sir, yours very truly, M. Requelme & Co."

That plaintiff kept the draft on hand for about two weeks, and sent it to a New York house for acceptance and collec-

Philbrick .agt. Dallett.

tion; that the steamer so sold was never moved, that she remained sunk, and at the time of the commencement of this action, was in the same state that she was sold in, and that no storm had occured to hurt or injure her. Plainitff insisted, however, that he had delivered her over to M. Requelme at the time of the sale.

The defendants next called Henry C. Dallett as a witness, and offered to prove by him the real nature of the transaction between the firm of M. Requelme & Co. and defendants, with a view of showing that the draft was a fraud upon the defendants.

The court excluded the proposed evidence, and defendants excepted.

The defendants then offered to prove, that there was no consideration between the drawers and acceptors, claiming to have laid the foundation for such proof by showing that the alleged consideration between the plaintiff and the drawers of the draft was prior to the acceptance of the draft by the defendants, and was not on the faith thereof.

The court excluded the evidence, holding that it would assume that the proof offered would establish the facts sought to be proven, but that they were not sufficient, as the case stood, to defeat a recovery on the draft.

Defendants excepted.

Defendants finally asked permission to go to the jury on the question whether Philbrick, the plaintiff, ever parted with any value for the draft.

The court denied such request, and defendants excepted.

The court directed a verdict for the plaintiff for the full amount of the draft, with interest, $11,785, to which direction defendants excepted.

The court ordered defendants exceptions to be heard in the first instance at general term, and the entry of judgment to be suspended in the meantime.

WM. W. GOODRICH, *for plaintiff.*

JOSEPH J. MARRIN, *for defendants.*

*By the court,* FREEDMAN, *J.*—In excluding defendants'
proposed evidence as to fraud by the drawers upon them, by
means of which they were induced to accept the draft, and
as to a failure of consideration between them and the drawers,
the learned judge who presided at the trial, clearly erred.
He probably assumed that the plaintiff had sufficiently shown
himself to be a *bona fide* holder of commercial paper for
value paid on the faith thereof. But such was not the fact.
The sale of the steamer *Ruby,* being a transaction between
the plaintiff and M. Requelme individually, the plaintiff, un-
der the direction of the firm of M. Requelme & Co., con-
tained in the letter accompanying the draft to collect the same
and hold the proceeds subject to the order of M. Requelme,
and in the absence of proof showing an appropriation by M.
Requelme, of the said proceeds to plaintiff's use, appeared, so
far as the evidence went, in the character of a mere naked
holder possessing authority to collect for the benefit of the
true owner; especially, as the court had, at an early stage
of the trial, excluded as unnecessary the proof offered by
plaintiff to establish actual ownership, and had ruled proof
of possession to be sufficient.

Even upon plaintiff's theory, however, that he took the
draft before acceptance for the debt of M. Requelme, the
evidence was admissible. In such case, and as the evidence
then stood, plaintiff took the unaccepted draft on account of
an antecedent debt, without parting with any value upon the
faith of either the draft or its acceptance, and defendants were
not precluded from showing that their subsequent acceptance
was procured wholly by the fraud of the drawers and was,
in point of fact, wholly without consideration. That was
one of the very issues raised by the answer, and, if estab-
lished as we must assume it would have been but for such
erroneous exclusion, would have cast the burden of proof upon
the plaintiff, to establish that he was an innocent actual

owner and holder of the draft for value paid on the faith of its acceptance.

As against the holder of a draft the acceptor, as a general rule, stands in the same position as the maker of a promissory note, and the drawer in the same as the indorser. By his acceptance the acceptor admits that he has funds of the drawer in his hands to pay it. He is, in such case, regarded as the principal and the drawer as his surety, and the accepted draft imports a debt due from the acceptor to the drawer, which is assigned to the payee. The instrument being one of those which on account of their negotiable quality and universal convenience in mercantile affairs, are specially favored by the law. If A. in the course of trade, parts with value on the faith of B.'s acceptance, the law, to protect A., as an innocent holder for a valuable consideration, against B.'s contradicting the words "value received" written above his promise, presumes a consideration to exist, and B. will not be permitted to overthrow such presumption by actual proof to the contrary.

But this rule applies only to a *bona fide* holder for a valuable consideration, and the doctrine as to what constitutes a person such *bona fide* holder for value, again varies in cases presenting a wide and marked distinction.

Thus, in *Cole* agt. *Saulpaugh*, (48 *Barb.*, 104), and *Schepp* agt. *Carpenter*, (49 *Barb.*, 542), the holder of an accommodation note, which had been given by the maker without restriction as to the manner in which it should be used by the payee, was held to be a *bona fide* holder for value as against the maker, notwithstanding it appeared that he took it for an antecedent debt and with notice of its character as accommodation paper. These decisions are based upon the fact that the payee, not being limited or restricted as to the manner of its use, had a right to apply it to the payment or security of an antecedent debt, or to sustain his credit with it in any other way.

So, in the absence of fraud, an acceptance has been held

to involve a consideration, inasmuch as it delays the holder's resort to the drawer, which he might have immediately in case of non-acceptance; and for the same reason a subsequent acceptance, before maturity and for the accommodation of the drawer, has been held to inure to the benefit of the holder who discounted the draft before acceptance in the expectation, justified by a previous course of dealing, that it would be so accepted (*Mechanics' Bank* agt. *Livingston,* 33 *Barb.,* 458).

But when the acceptance is not only without consideration in fact, but, in addition, has been procured by means of a fraud practiced upon the acceptor, an entirely different rule prevails. Here, the mere taking of the draft on account of an antecedent debt, without giving up or surrendering something of value on the faith of its acceptance, is not enough to constitute the holder a *bona fide* holder for value as against the acceptor. The doctrine of *Swift* agt. *Tyson,* (16 *Peters U. S.,*      ), has not been followed in this state. On the contrary, our courts held, at quite an early day, that the receipt of commercial paper fraudulently put in circulation, or diverted from the purpose for which it was originally issued, merely as payment or security for a precedent debt, no new credit or other thing of legal value being given on the faith thereof, and no security being relinquished or discharged, nor any new responsibility incurred on the credit thereof, is not parting with value, such as to enable the holder to enforce such commercial paper against an accommodation party, or to hold it against the true owner or to hold it free of equities existing upon it against the transferrer at the time of the transfer.

This rule has been firmly maintained, both at law and in equity, by a long and uninterrupted series of adjudications, and is, beyond question, the settled law of this state. (*Coddington* agt. *Bay,* 20 *Johns.,* 637 ; affirming, *S. C.,* 5 *Johns. Ch.,* 54 ; *Stalker* agt. *McDonald,* 6 *Hill,* 93 ; *Wardell* agt. *Howell,* 9 *Wend.,* 170 ; *Rosa* agt. *Brotherson,* 10 *Wend.,* 86 ; *Hart* agt. *Palmer,* 12 *Wend.,* 523 ; *Ontario Bank* agt.

*Worthington,* 12 *Wend.,* 593 ; *Payne* agt. *Cutler,* 13 *Wend.,* 605 ; *Morton* agt. *Rogers,* 14 *Wend.,* 576 ; *Cnmmercial Bank* agt. *Norton,* 1 *Hill,* 501 ; *Manhattan Co.* agt. *Reynolds,* 2 *Hill,* 140 ; *Scott* agt. *Betts, Hill & D. Supp.,* 363 ; *Elliott* agt. *Dudley,* 19 *Barb.,* 326 ; *Francia* agt. *Joseph,* 3 *Edw. Ch.,* 183 ; *Clark* agt. *Ely,* 2 *Sandf. Ch.,* 166 ; *Furniss* agt. *Gilchrist,* 1 *Sandf.,* 53 ; *Stewart* agt. *Small,* 2 *Barb.,* 559 ; *Mickles* agt. *Colvin,* 4 *Barb.,* 304 ; *Spear* agt. *Myers,* 6 *Barb.,* 445 ; *Clark* agt. *Gallaher,* 20 *How.,* 308 ; *Farrington* agt. *Frankfort, Bk.,* 31 *Barb.,* 183 ; *Prentiss* agt. *Graves,* 33 *Barb.,* 621 ; *Cardwell* agt. *Hicks,* 37 *Barb.,* 458 ; *West* agt. *Am. Exchange Bk.,* 44 *Barb.,* 175 ; *Crandall* agt. *Vickery,* 45 *Barb.,* 156 ; *McBride* agt. *Farmers' Bk.,* 26 *N. Y.,* 450 ; *Lawrence* agt. *Clark,* 36 *N. Y.,* 128).

It is only where a creditor receives a negotiable paper fraudulently put in circulation, or diverted from its purpose, in good faith, and in actual satisfaction and discharge of a prior indebtedness, so that unless such paper is available in his hands, he loses the demand, that this is considered as parting with value. In such case, the actual discharge of the personal responsibility of the debtor is equivalent to parting with securities or to paying money. The extinction of a legal demand in its orignal form is, however, to be proved affirmatively ; and the question whether a party is a holder for value, so as to displace in his favor any right or equity of prior parties, depends upon the fact being established of an intended and actual extinguishment (*N. Y. Exchange Co.* agt. *De Wolf,* 3 *Bosw.,* 86, and authorities there cited).

Time and space do not permit me to make a more extended reference to the authorities cited than I have done, and I will conclude, therefore, by calling attention yet to the following decisions of a comparatively recent date, which deserve to be carefully noted :

In *McBride* agt. *The Farmers' Bank* (26 *N. Y.,* 450), and *Commercial Bank of Clyde* agt. *Marine Bank* (6 *Abb. N. S.,* 33 ; *S. C.,* 3 *Keyes,* 337), it was held that a bank does not

become a purchaser for value of demands remitted to it for collection, by reason of its having a balance against the remitting bank, for which it has refrained from drawing, and of its having discounted notes for the latter upon its indorsement, in reliance upon a course of dealings between the banks to collect notes for each other, each keeping an open account of said collections, treating all the paper sent for collection as the property of the other, and drawing for balances at pleasure.

In *Bright* agt. *Judson* (47 *Barb.*, 29), it was expressly decided, that fraudulent representations by which one is induced to accept a bill, are a bar to a recovery thereon by a holder who took the bill in payment of an antecedent debt, without surrendering something of value upon the faith of such acceptance.

And in the *Farmers and Mechanics' Bank* agt. *The Empire Stone Dressing Co.*, (5 *Bosw.*, 289), the decision was that to entitle one to enforce an acceptance, which is otherwise invalid (whether for want of power in the agent who wrote the acceptance to bind his principal, as in that case, or for fraud practiced by the drawer upon the acceptor, as in the case at bar, makes no difference), on the ground that he is a *bona fide* holder for value, it must appear that he parted with value upon the faith of such acceptance. He may be a *bona fide* holder of the bill for value paid therefor, and be entitled to enforce it against every other party thereto, and yet, have no right to recover on such acceptance.

In view of the authorities referred to, it is entirely clear, that defendants had an unquestionable right to prove the facts embraced in the two offers made, and that the exclusion of their proposed evidence constituted error.

Defendants' exceptions to such exclusion of their evidence and to the direction of a verdict against them must, therefore, be sustained, and the verdict must be set aside and a new trial ordered, with costs to defendants, to abide the event.

BARBOUR, *Ch. J.* and SEDGWICK, *J.* concurred.