BLAINE, GOULD & SHORT *vs.* BOURNE & CO.

A bill of exchange specially indorsed, "Pay J. C. or order on account of B., G. & S.,"
was indorsed generally by J. C., sent by him to his correspondents, and paid by the
drawees. J. C. failed about an hour before this payment was made, in debt to his cor-
respondents, and this failure was known about an hour after payment made. His corre-
spondents applied the amount of the payment to reducing their claim against J. C.
In an action by B., G. & S. against these correspondents to recover the amount of the
payment:
*Held*, that the special indorsement showed that no consideration had been paid for the bill
by J. C.; that it was notice to all subsequent holders that J. C. held the bill in trust for
B., G. & S. for collection; that this trust followed the bill; and that neither J. C. nor
his indorsees had any property in the bill.
*Held*, further, that the defendants not having paid the money over to J. C. before hearing
of his failure, could not apply it to reducing the debt owed them by J. C.
*Held*, further, that B., G. & S. were the real owners of the bill, and as such entitled to recover.
A general indorsement of bills is *primâ facie* evidence of property in the indorsee; but,
notwithstanding a general indorsement, paper sent only for collection will still remain
the property of the sender as to all persons having notice.
" Short entry," "Entering short," explained.

ASSUMPSIT on a bill of exchange, heard by the court.

*March* 6, 1875. POTTER, J. The draft in question was as
follows :—

"BANKING HOUSE OF BLAINE, GOULD & SHORT,
"North East, Pa., *August* 16, 1873.

" Thirty days after date pay to the order of Frank Thayer
Seven Hundred dollars, FRANK THAYER.
" To Messrs. B. G. CHACE & Co., *Providence, R. I.*
" Due September 18."

Thayer was the agent in Pennsylvania to make purchases for
Chace & Co. of Providence, and he drew on them for payment.

This draft was indorsed by Thayer in blank, and was dis-
counted by the plaintiffs before acceptance. The plaintiffs in-
dorsed it as follows :—

" Pay Jay Cooke & Co. or order on account of Blaine, Gould
& Short, North East, Pa. " ALFRED A. SHORT, *Cash'r.*"

By Jay Cooke & Co. it was sent to the defendants in Provi-
dence for collection, indorsed as follows :—

' " Pay to the order of Messrs. Bourne & Co.
" JAY COOKE & Co."

The draft was paid by Chace & Co. to the defendants about
noon of September 18. Jay Cooke & Co. stopped payment about

eleven A. M. of that day, and about one P. M. of the same day their failure was generally known in Providence.

The draft was never the property of Jay Cooke & Co., and was never credited by them to the plaintiff, but was merely received by them for collection.

Jay Cooke & Co. were owing the defendants, and the defendants credited it in their account with them, and claim that they had a right so to do.

The rights of parties to bills forwarded for collection have been a fruitful source of litigation. Questions of this sort have generally arisen where some party becomes insolvent, and the contention is who shall bear the loss.

When is the last holder of paper sent for collection bound to look beyond the last remitter?

We are referred by defendants' counsel to one case only, *Bank of Metropolis* v. *New England Bank*, 17 Pet. 174; also in 1 How. U. S. 234. In that case a bank had forwarded for collection paper with a general or unrestricted indorsement to another bank, which, with its own similar indorsement, had sent it to a third bank for collection. The second or intermediate bank failed, and on the day of its failure notified the third bank that the paper was the property of the first bank. In a suit by the first against the third bank to recover the proceeds, the court, while admitting that if it was a case of two banks acting as collecting agents for each other, and where no consideration was paid or money advanced, the paper would remain the property of the sender, holds that in this case the third bank, which held the paper, not having notice by the indorsement or otherwise that the paper was not the property of the second bank, had a right to treat it as theirs, and was not bound to inquire; and that where two banks dealt together in this way for several years, kept an account current, and mutually credited the collections, there was a lien upon the paper so transmitted for the balance without regard to who might be the real owner. The first bank, by indorsing the paper in such a manner as to make it appear *primâ facie* the property of the failing bank, had no particular equity in its favor.

But this came again before the United States Supreme Court in *Bank of Metropolis* v. *New England Bank*, 6 How. U. S. 212, where the court lays down its propositions more definitely; that

if the collecting bank, at the time of the dealings, had notice that the bill was not the property of the intermediate remitting bank, but had been merely sent by them for collection as agent for some other bank, then the collecting bank had no right to retain for any balance due from the intermediate bank which had failed; even if the collecting bank had no notice, they could not retain as against the real owner, unless credit had been given to the intermediate remitting bank, or what was equivalent, balances suffered to remain to be met by such paper; but if the latter was the case, and they had treated the intermediate bank as the owner, and had no notice, then they might retain.

And there are further explanations of the decision in *Wilson* v. *Smith*, 3 How. U. S. 763, 769. And see it criticised and restricted in *McBride* v. *Farmers' Bank of Salem*, 25 Barb. S. C. 657, 661, which case was affirmed on appeal in *McBride* v. *Farmers' Bank*, 26 N. Y. 450. See also *Reeves et al.* v. *State Bank*, 8 Ohio St. 465; *Jones* v. *Milliken & Son*, 41 Pa. St. 252; *Dickerson* v. *Wasson*, 54 Barb. S. C. 230; also in 47 N. Y. 439. There are some cases going still further in favor of the original remitting bank, and allowing parol evidence to show the fact. *Lawrence* v. *Stonington Bank*, 6 Conn. 521, and cases there cited; *Bank of Washington* v. *Triplett & Neale*, 1 Pet. 25; *Commercial Bank of Clyde* v. *Marine Bank*, 3 Keyes, 337; also in 1 Ab. Ct. App. Dec. 405.

A general indorsement of bills is *primâ facie* evidence of property in the indorsee, and even where it is subject to any equity or trust between former parties, may change the legal property as to *bonâ fide* holders for value. *Collins* v. *Martin*, 1 B. & P. 648. But even where there is a general indorsement of paper sent only for collection, it will still remain the property of the sender as to all persons having notice.

The counsel for the plaintiffs say that the present case would come under the head of what is in some places denominated a " short entry." It would seem that in London it was a custom ( *Giles et al.* v. *Perkins et als.* 9 East, 12, and counsel *arguendo* in *Ex parte Thompson*, 1 Mont. & Mac. 102, 110) for bankers to receive bills for collection and to enter them immediately in their customers' accounts, but never to carry out the proceeds in the column to their credit until actually collected; and this was

called a " short entry," or " entering short."    And such bills al-
ways continued the property of the customer, unless the contrary
was to be inferred from some course of dealing.    Whereas coun-
try bankers in England generally credited to their customers at
once all bills considered good, and generally allowed drafts upon
the proceeds.    And even in the latter cases Lord Ellenborough
held such bills did not pass to the assignees in bankruptcy, if
there was a balance in favor of the customer over and above the
bills.    *Giles et al.* v. *Perkins et als.* 9 East, 12 ; *Ex parte Har
ford,* 2 Rose, 163.    But Lord Eldon held that where they were
with the knowledge of the customer entered as cash, and the
customer was entitled to draw against them, he could not claim
the specific bills.   *Ex parte Sargeant,* 1 Rose, 153 ; *Ex parte
Thompson,* 1 Mont. & Mac. 102 (A. D. 1828).    But even where
the custom was to enter short and it was not done, this would
not change the property, unless some act of the customer con-
curred.   *Ex parte Sargeant,* 1 Rose, 153 ; *Ex parte Pease,* 1
Rose, 232 ; and the Vice-Chancellor's opinion in *Ex parte
Thompson,* 1 Mont. & Mac. 102, 112.                              •

But besides the ground that this was equivalent to a short
entry, and that the cases decided upon that point apply to it, it
is contended that in this case the effect of the restriction in the
indorsement was to give to all subsequent holders express notice
of the trust, and we think this view of the plaintiff's counsel is
correct.

The indorsee is rather an agent of the indorser with power of
substitution, and the bill is still in the possession of the indorser
by his agent.   *Ex parte Sargeant,* 1 Rose, 153.    The very mode
of indorsement in this case shows that it is not a case of ordi-
nary indorsement, and that no consideration has been paid for it.
*Eadie & Laird* v. *E. India Co.* 1 W. Bla. 295 ; also in 2 Burr.
1216.    The bill must be taken by the holder subject to the trust ;
and, says Judge Story (On Agency, § 211), if he voluntarily
consents to or aids in any other appropriation he is responsible ;
and says Judge Byles (On Bills, *157), he holds the bill or
money as trustee for the restraining party, and is liable to the
party making the restriction.    The words are notice that the
restricted indorsee has no property in the bill ; that he is a mere
trustee, and that he can appoint no sub-agent except for the pur-

pose of holding the bill or money on the same trust, and if the holder pays it to the intermediate agent, he becomes responsible for its misapplication.

In the case of *Sigourney* v. *Lloyd et als.* 8 B. & C. 622; also in 3 M. & R. 58, and in Dan. & Ll. 132; 2 Chitty Jun. on Bills, 1412, 1439, it was contended that an indorsement, " Pay to B. for my use," was a mere direction to B. as to the application of the money; but Lord Tenterden said that if it meant no more the words were useless; as he would be so liable without those words.

In that case the payee indorsed generally to A. A., the plaintiff, indorsed, " Pay B. or order for my use; " the defendants discounted it and applied it to the credit of B. B. failed, and it was held that the indorsement was sufficient notice to prevent its transfer for the benefit of any other person; that all subsequent indorsees were trustees for the plaintiff; and that whoever advanced any money on it did it at his peril. And on appeal this judgment was confirmed by the Exchequer Chamber, the court holding that the money to whomsoever paid was in trust for the indorser. *Lloyd et al.* v. *Sigourney,* 5 Bing. 525; also in 3 M. & P. 229, and 3 You. & Jer. 220, and Dan. & Ll. 213.

This custom of restricted indorsing is not of late origin, but is spoken of as usual in *Snee et al.* v. *Prescott et als.* 1 Atk. 245, 249, A. D. 1743; the object being, as there stated, to prevent the indorsement being filled up in such a manner as to pass the interest in the bill.

If the defendants in the present suit had paid the cash to Jay Cooke before hearing of the failure, it would have presented a different question. But they had no right to apply the money of the plaintiffs to the payment of a debt due to them (the defendants) from Jay Cooke. This is not such a payment as can protect them against a suit by the plaintiffs, the real owners. *Truettel* v. *Barandon,* 2 Chitty Jun. on Bills, 1002; also in 8 Taunt. 100, and 1 Moore, 543; *Thompson* v. *Giles,* 2 Chitty Jun. on Bills, 1190; also in 2 B. & C. 422, and 3 D. & R. 733; Lloyd's note to Paley, quoted in full in Story on Agency, § 228, n.; 1 Bell's Comm. *270, which work is praised by Mr. Warren as being a " mine of commercial law." *Judgment for plaintiffs.*

*Browne & Van Slyck,* for plaintiffs.

*James M. Ripley,* for defendants.