## THE FARMERS' NATIONAL BANK OF FRANKLIN-VILLE, PLAINTIFF, *v.* EZRA T. VAN SLYKE AND EDWIN C. SNYDER, DEFENDANTS.

*Fraudulent concealment which will avoid a contract of suretyship.*

In an action, brought to recover the amount of two promissory notes made by the defendant Van Slyke and indorsed by the defendant Snyder, it appeared that the plaintiff had been the holder of four notes made by the defendant Van Slyke, upon each of which there was the name of an indorser which turned out to be forged; that the officers of the plaintiff's bank, after learning this fact, investigated the financial condition of the defendant Van Slyke and found him to be insolvent, and thereupon plaintiff's cashier, in company with Van Slyke, went to see the defendant Snyder, to whom Van Slyke stated that one Adams, a director of the bank, had been his indorser; that his notes had become due and he wanted to renew them, and that he had had some little difficulty with Adams in reference to a store account, and did not like to ask him to again indorse for him; in fact Adams had not indorsed for him and the notes at the bank were not due. Nothing was said about the notes having been forged, and that fact was unknown to the defendant Snyder.

The plaintiff's cashier, who had not been present when the foregoing statements were made by Van Slyke to Snyder, thereafter met with them; drew the two notes in suit which were signed by Van Slyke and indorsed by Snyder, and took them to the bank. On the same evening, however, he saw Snyder and stated to him that it was rumored that the notes in the bank were forgeries, but said that it was not so and that they were all right.

The court held that there was no question of fact in the case for the jury, and refused to submit to them the question whether the plaintiff was guilty of a fraudulent concealment of facts, and directed a verdict for the plaintiff for the amount due upon the notes.

*Held,* that there was a withholding of facts by the cashier of the plaintiff from the defendant Snyder, which the plaintiff was in duty bound to have made known to Snyder before accepting him as an indorser upon the notes.

Where a person taking a security knows certain facts and is present, having an opportunity to inform the proposed surety thereof, and having reason to believe that the proposed surety does not know such facts and is being deceived and defrauded into becoming such surety, it is the duty of such person to inform the surety of such facts, and the acceptance by him of the surety under such circumstances, without enlightening him as to the facts, constitutes a fraud which will avoid the contract of suretyship.

MOTION for new trial by the defendant Snyder, on exceptions ordered to be heard at the General Term in the first instance after a trial at the Cattaraugus Circuit.

*Alfred Spring*, for the plaintiff.

*A. D. Scott*, for the defendants.

HAIGHT, J.:

This action was brought to recover the amount of two promissory notes, made by the defendant Van Slyke and indorsed by the defendant Snyder. The evidence taken upon the trial tends to show that the plaintiff was the holder of four notes made by the defendant Van Slyke, amounting to the sum of $664. That upon each note there was the name of an indorser, which turned out to be forged. That the officers of the plaintiff's bank, after learning of the fact that the names of the indorsers were forged, investigated the financial condition of the defendant Van Slyke and found him to be insolvent. The plantiff's cashier, Weed, then called upon him and told him he must furnish additional security. Thereupon they went to neighbors of Van Slyke, who refused to indorse for him. Thereupon the defendant Van Slyke suggested that the defendant Snyder, who lived at Yorkshire Centre, some miles distant, might indorse for him. Thereupon he, in company with Weed, the plaintiff's cashier, took the train and went to Yorkshire Centre. The defendant Snyder being at work in the woods, Weed remained at the hotel while Van Slyke went for him and brought him to the hotel where Weed was. That at the interview between Van Slyke and Snyder in the woods and on their way to the hotel, Van Slyke stated that one Mr. Adams, a director of the bank, had been his indorser; that his notes had become due and he wanted to renew them at the bank; that he had had some little difficulty with Adams in reference to a store account and did not like to ask him to again indorse for him; whereas, in truth and in fact, Adams had not indorsed for him, and the notes at the bank were not due. On arriving at the hotel the subject was talked over, but just what was said in Weed's presence Snyder was unable to remember, but did recollect that it was talked about the notes being given in renewal. Nothing was said about the notes having been forged, and that fact was unknown to the defendant Snyder. Weed drew the two notes in suit. They were signed by Van Slyke and indorsed by Snyder, and Weed took them and returned to the bank. He was there questioned by Adams, the director, as to whether he informed Snyder of the forgeries, and

stated that he did not. That Adams thereupon directed him to return to Snyder's and inform him of that fact. That on the same evening Weed returned to Yorkshire and there told Snyder that it was rumored that the notes in the bank were forgeries, but said that it was not so, that they were all right. Immediately thereafter the defendant Snyder made inquiry, and after finding that the indorser's name upon the notes had been forged, he went to the bank on the following Monday and notified the cashier of that fact, and stated to him that he should not consider himself holden on the notes; that "it was a snap game to get him to indorse the notes." The bank retained the new notes as well as the old notes upon which the name of the indorser had been forged.

At the conclusion of the evidence, the defendant requested the court to submit to the jury the following questions: First. That the plaintiff was guilty of a fraud in procuring the indorsement of the defendant Snyder to the notes in suit. Second. That the plaintiff was guilty of a fraudulent concealment of facts which were unknown to the defendant Snyder at the time he indorsed the notes as would render the indorsement void in the hands of the plaintiff. Third. That there was no consideration for the indorsement, and the plaintiff was not a *bona fide* holder of the notes in suit, under the circumstances disclosed by the evidence, so far as the defendant Snyder was concerned. The court declined to submit to the jury any of the propositions so requested, but held that there was no question of fact in the case for the jury, and directed a verdict for the plaintiff for the amount due and unpaid upon the notes; to which ruling and direction the defendant excepted.

The serious question presented is, whether there was not a withholding of facts by the cashier of the plaintiff, which he was in duty bound to make known to Snyder, before accepting him as an indorser upon the notes. The rule upon this question is variously stated by different authors, and the authorities upon the subject are not all in strict harmony. In Story's Equity Jurisprudence, at section 215, it is stated that "If a party taking a guaranty from a surety conceals from him facts which go to increase his risk and suffers him to enter into the contract under false impressions as to the real state of the facts, such a concealment will amount to a

fraud because the party is bound to make the disclosure; and the omission to make it, under such circumstances, is equivalent to an affirmation that the facts do not exist. So, if a party knowing himself to be cheated by his clerk, and concealing the fact applies for security in such a manner and under such circumstances as holds the clerk out to others as one whom he considers as a trustworthy person, and another person becomes his security, acting under the impression that the clerk is so considered by his employer, the contract of suretyship will be void."

Morgan, in his American Notes, in De Colyar on Guaranties, page 369, says: "A person cannot be considered as guilty of a fraud by omitting to make known facts of an important character affecting the risk of the surety when it does not appear that he had an opportunity to do so. But if he does know such facts and has reason to believe that they are not known to the proposed surety, if information be sought from him, or if he have a suitable opportunity and the facts are of such a character that they are not found in the reasonable or usual course of that kind of business, and are such as to materially increase the risk, it is his duty to make them known." * * * And again at page 370: "To receive a surety known to be acting upon the belief that there are no unusual circumstances by which his risk will be materially increased, well knowing that there are such circumstances, and having reasonable opportunity to make them known, is a legal fraud, for which the surety will be relieved from the contract."

Daniel in his work on Negotiable Instruments, at section 1309, says: "The contract of suretyship is a contract *uberrimœ fidei;* therefore, where one is induced to become surety for another as drawer of a bill, or indorser of a note for accommodation, or otherwise, and there is any misrepresentation or fraudulent concealment of a material fact, which if known would have induced the drawer or indorser or other surety not to enter into the contract, his contract is void from the beginning as between the surety and all parties privy to such misrepresentation or concealment."

In the case of *Stewart* v. *Small* (2 Barb., 559), it was held that "where a person's signature to a note as surety for another is obtained by fraud and false pretenses, that circumstance avoids the note in the hands of a holder who has received the same without

paying any consideration therefor; it cannot be said that a person has parted with value for a note when he has only given credit for the amount of it upon a paper which he knew to be of no value."

In the case of *Farrington* v. *The Frankfort Bank* (24 Barb., 554), it was held that where the plaintiff was induced, by the false and fraudulent representations of the drawer of bills of exchange to indorse the same for his accommodation, and the bills were thereupon delivered to the cashier of a bank which then held protested drafts drawn by the same drawer upon the same drawees, there being no agreement between the drawer and the cashier that the new drafts should be received by the bank in payment of the protested drafts, but the same were procured by the drawer and delivered to the cashier, with the intention that they should be held as additional and collateral security to the protested bills, and the new drafts were subsequently passed to the credit of the drawer on the books of the bank, and he was charged with the protested bills, which still remained in its possession, the indorsement was deemed void, and the bank was not entitled to protection as a *bona fide* holder. It was also held that the plaintiff might maintain an action against the bank before the maturity of the bills, to have the indorsement declared void in its hands, and to restrain the collection of the bills and have the indorsement erased therefrom.

In the case of *Bostwick* v. *Van Voorhis* (91 N. Y., 353–360), EARL, J., in delivering the opinion of the court in that case, says: "Bartow was teller of the bank before he was appointed cashier thereof, and it is claimed that the directors, before his appointment as cashier, were aware of certain misconduct of his as teller, which they concealed from the sureties and which they were bound, acting in good faith, to have made known to them. It is undoubtedly true that if the directors had knowledge that Bartow had been dishonest and unfaithful in his office as teller, they were bound to apprise the sureties of that fact, otherwise they could not hold them." (See, also, *Franklin Bank* v. *Cooper*, 36 Me., 179–195; *Atlas Bank* v. *Brownell*, 9 R. I., 168–175; *Evans* v. *Keeland*, 9 Ala. [N. S.], 42–48; *Owen* v. *Homan,* 4 House of Lords Cases, 1852 to 1854, p. 1033–1035.) It will be observed that from what has been held and written upon the question, that it is not clear or always easy to determine just what facts or circumstances make a case in which it is the duty of

a person taking security from another to make known to the proposed surety the facts of the case, and thus warn him of his danger. But it appears to us that where a person taking security knows the facts and is personally present, having an opportunity to inform the proposed surety and having reason to believe that the proposed surety does not know the facts and is being deceived and defrauded into becoming such, it is his duty to post him, and the acceptance of him as surety or indorser under such circumstances would be a fraud which would avoid the contract. In the case under consideration, Weed, the cashier, knew of the forgeries. Nothing was said about the forgeries in the presence of Snyder. All questions as to inferences to be drawn from the facts were for the jury, and it appears to us that the evidence was sufficient to raise a question for the determination of the jury as to whether Weed did not have reason to believe and understand that Snyder was being defrauded and deceived into indorsing the notes in suit to renew the notes at the bank, believing them to be good and valid notes then due, given in the ordinary course of business by a man in good standing at the bank

The motion for a new trial should be granted, costs to abide event.

BRADLEY and DWIGHT, JJ., concurred.

Motion for new trial granted, costs to abide event.